UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| WILLIAM MILFORD, on behalf of himself and all others similarly situated,<br><br>Plaintiff.<br><br>v.<br><br>ROEHL TRANSPORT, INC.,<br><br>Defendant. | Case No. 2:22-cv-00879-BHL |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. BACKGROUND ....................................................................................................... 2

    A. Milford Agrees to Participate in Roehl's Training Program and Executes the Safety and Job Skills Training Program Agreement ............................................... 2

    B. Milford Sues Roehl. ..................................................................................... 4

III. ARGUMENT ............................................................................................................. 5

    A. Milford's Minimum Wage Claims Based on Roehl's Post-Employment Collections Should Be Dismissed. ........................................................................... 5

    B. Milford's Wisconsin Deduction Claim Must Be Dismissed. ................................. 8

    C. The Court Should Dismiss Milford's Deceptive Trade Practices Act Claim. ....... 10

        1. Milford failed to plausibly allege Roehl made a representation to "the public" with the intent to induce an obligation. ............................... 10

        2. Representations intended to induce entry into an employment relationship are beyond the scope of the DTPA. ..................................... 11

        3. Milford's DTPA claim should be dismissed for other reasons. ................. 12

            a. Milford does not plausibly allege Roehl misrepresented the training he would receive, or that such misrepresentation materially induced a pecuniary loss. ............................................. 12

            b. Milford does not plausibly allege Roehl misrepresented the value of the Training Program, or that such misrepresentation materially induced a pecuniary loss. ............... 14

            c. Milford's non-disclosure theory fails as a matter of law. ............. 15

IV. CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*188 LLC v. Trinity Indus., Inc.*,
  300 F.3d 730 (7th Cir. 2002) .................................................................................... 2

*Batteries Plus, LLC v. Mohr*,
  2001 WI 80, 244 Wis. 2d 559, 628 N.W.2d 364 ...................................................... 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................ 11

*Bland v. Edward D. Jones & Co., L.P.*,
  375 F. Supp. 3d 962 (N.D. Ill. 2019) ........................................................ 2, 3, 4, 6, 7

*Bundy v. Univ. of Wis.-Eau Claire*,
  220 Wis. 2d 357, 582 N.W.2d 504, 1998 WL 265042
  (Wis. Ct. App. May 27, 1998) ...................................................................... 10, 11, 12

*Gordon v. City of Oakland*,
  627 F.3d 1092 (9th Cir. 2010) .................................................................................. 6

*Heder v. City of Two Rivers*,
  149 F. Supp. 2d 677 (E.D. Wis. 2001)...................................................................... 5

*Heder v. City of Two Rivers, Wisconsin*,
  295 F.3d 777 (7th Cir. 2002) ............................................................................ 1, 5, 6

*New Life of Crivitz, LP v. Peshtigo River Inn at Crivitz, LLC*,
  2015 WI App 68, 364 Wis. 2d 758, 869 N.W.2d 170 ............................................. 11

*Park v. FDM Grp. (Holdings) PLC*,
  No. 16 CV 1520-LTS, 2017 WL 946298 (S.D.N.Y. Mar. 9, 2017) .......................... 7

*Park v. FDM Grp., Inc.*,
  No. 16-CV-1520-LTS, 2018 WL 4100524 (S.D.N.Y. Aug. 28, 2018) ..................... 7

*RMS of Wis., Inc. v. S-K JV*,
  13-CV-1071, 2016 WL 1267168 (E.D. Wis. Mar. 31, 2016).................................. 10

*Runzheimer Int'l, Ltd. v. Friedlen*,
  2015 WI 45, 362 Wis. 2d 100, 862 N.W.2d 879 .................................................... 14

*Skyrise Constr. Grp., LLC v. Annex Constr., LLC*,
    No. 18-CV-381, 2019 WL 699964 (E.D. Wis. Feb. 20, 2019) ................................ 12

*State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*,
    2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110 ....................................... 8

*State v. American TV & Appliance of Madison, Inc.*,
    430 N.W.2d 709 (Wis. 1988) .................................................. 14

*Tietsworth v. Harley-Davidson, Inc.*,
    2004 WI 32, 270 Wis. 2d 146, 677 N.W.2d 233 ............................... 10, 11, 14, 15

*Vazquez v. Tri-State Mgmt. Co.*,
    No. 01C5926, 2002 WL 58718 (N.D. Ill. Jan. 14, 2002) ............................. 7

*Wolnak v. Cardiovascular & Thoracic Surgeons of Cent.,*
    *Wis., S.C.*, 2005 WI App 217, 287 Wis. 2d 560, 706 N.W.2d 667 .......................... 9

**Statutes**

Wis. Stat. § 100.18 ............................................................ 1, 2, 10, 11, 12, 15
Wis. Stat. § 103.455 ............................................................ 1, 2, 8, 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................ 2

**Regulations**

*Safe Driver Apprenticeship Pilot Program to Allow Persons Ages 18, 19, and 20 to Operate*
    *Commercial Motor Vehicles in Interstate* Commerce,
    87 Fed. Reg. 2477-01 (Jan. 14, 2022) ............................................ 13

## I. INTRODUCTION

Plaintiff, William Milford, worked for Defendant, Roehl Transport, Inc., as a truck driver for approximately two months. Based on that two-month experience, he filed a nationwide class and collective action alleging Roehl (1) failed to pay the minimum wage under the Fair Labor Standards Act (FLSA), (2) failed to pay the minimum wage under Wisconsin law, (3) made unlawful deductions from wages in violation of Wis. Stat. § 103.455, and (4) violated Wisconsin's Deceptive Trade Practices Act (DTPA), Wis. Stat. § 100.18. ECF No. 8-1 (Amended Complaint).

First, the Court should dismiss Milford's minimum wage claims predicated on Roehl's alleged post-employment collection of Milford's training debt. Milford signed an agreement (Training Agreement) to participate in Roehl's on-the-job training program for new truck drivers (Training Program). Through the program, he drove over the road with another, more experienced driver. Under the agreement, Roehl agreed to front Milford the $3,130.00 for the Training Program and to forgive the loan if Milford completed 40,000 solo paid miles. Milford admits he did not complete the minimum miles before his employment ended. Even so, he alleges the "$1,800 or $1,900" he ultimately paid to a collection agency was a "retroactive deduction" or "illegal kickback" in violation of the FLSA and Wisconsin's minimum wage law. The Seventh Circuit's decision in *Heder v. City of Two Rivers, Wisconsin*, 295 F.3d 777 (7th Cir. 2002), forecloses Milford's theory. There, the Court held an employer can collect training cost debt as any "ordinary creditor" without violating the FLSA or Wisconsin law.

Second, the Court should dismiss Milford's state law deduction claim under Wis. Stat. § 103.455 for two reasons. First, that statute only prohibits "deduction[s] from the wages due or earned by any employee, who is not an independent contractor, for defective or faulty workmanship, lost or stolen property or damage to property." *Id.* Here, Milford concedes Roehl did not deduct the "$1,800 or $1,900" in training costs from his wages; rather, he paid this money

to a collection agency after his employment ended. Accordingly, Wis. Stat. § 103.455 does not apply. Second, the statute does not apply to the amounts Roehl actually deducted from his wages because Milford concedes those deductions were "unrelated to costs arising from faulty workmanship, loss, theft, or damage." *Am. Compl.*, ¶ 48.

Finally, the Court should dismiss Milford's claim under the DTPA, Wis. Stat. § 100.18. That statute prohibits untrue, deceptive, or misleading sales marketing made to the general public. But Milford's DTPA is based on alleged misrepresentations in the parties' Training Agreement. He fails to identify any alleged misrepresentation Roehl made to the public. And his Amended Complaint otherwise stretches the DTPA beyond the statute's scope. His DTPA claim should be dismissed.

## II.     BACKGROUND[1]

### A.     Milford Agrees to Participate in Roehl's Training Program and Executes the Safety and Job Skills Training Program Agreement.

Milford worked for Roehl as a truck driver for two months—from approximately September to October 2020. *Am. Compl.*, ¶ 5. During that time, Roehl paired Milford with a lead driver on a single truck to deliver freight for Roehl's customers. *Id.* ¶¶ 23, 29. Roehl paid Milford a flat daily rate for each day he was over-the-road with the lead driver. *Id.* ¶¶ 26, 29. Specifically, Milford alleges Roehl paid him $90 per day. *Id.* ¶ 29.

Milford executed a Safety and Job Skills Training Program agreement (Training Agreement) with Roehl (attached as Exhibit 1 to the Amended Complaint).[2] The Training

---

[1] Consistent with Fed. R. Civ. P. 12(b)(6), Roehl's motion takes Milford's factual allegations in his Amended Complaint as true and summarizes those alleged facts here. Roehl reserves its right to challenge Milford's allegations at a later stage in this litigation.

[2] The Court can consider the Training Agreement without converting Roehl's motion to dismiss to a motion for summary judgment. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Bland v. Edward D. Jones & Co., L.P.*, 375 F. Supp. 3d 962, 968 n.3 (N.D. Ill. 2019)

2

Case 2:22-cv-00879-BHL    Filed 11/14/22    Page 6 of 20    Document 10

Agreement explained that "[t]hrough Roehl's" Training Program Milford would "acquire valuable experience, training, and information concerning the competent, safe, and efficient operation of tractor/trailers." *Training Agreement* at 1. Additionally, "Roehl [would] expend a significant amount of time, money, and effort to provide [Milford] with first class job training through [the] program[.]" *Id.* "The value of the [Training Program] is in effect a loan to you. It's a loan you'll never have to pay back as long as you work for us as a driver and complete 40,000 paid solo miles. Once you have completed 40,000 paid solo miles, this debt is completely forgiven, and you owe us nothing for the [Training Program]." *Id.*

Under the Training Agreement, the parties' agreed that "in return for [Milford's] admission to Roehl's [Training Program], Roehl [would] expend on [his] behalf the value of the [Training Program], which is equal to $3,130.00." *Id.* at 2. Milford agreed to repay "the value of the [Training Program] . . . if [he did] not complete 40,000 paid solo miles." *Id.* "This debt goes away when you have completed 40,000 paid solo miles. Otherwise, this debt is all due and payable upon termination of your employment." *Id.* No interest would accrue on Milford's loan while he was employed. *Id.*

Under the Training Agreement, Milford "agree[d] to allow Roehl to offset and deduct any and all amounts owed by [Milford] pursuant to this Agreement from any pay owed by Roehl to [Milford], provided that any deduction will not contravene state or federal law or reduce [his] wage to an extent prohibited by any state or federal law." *Id.* "If any such offset or deduction is made, you are still obligated to pay Roehl the balance owing for any payments made to your driving

---

(concluding, in context of order granting motion to dismiss FLSA claim, court could consider contract containing training cost repayment provision).

school or lender or the value of your training that is not deducted from your pay, as well as any advances on your pay received but not yet earned." *Id.*

Milford "did not drive the minimum number of miles required by the [Training Program] before his employment ended with Defendant." *Am. Compl.*, ¶ 55. He alleges "Defendant reported Plaintiff to a credit and/or collections agency and it sought to collect approximately $2,300 from Plaintiff." *Id.* ¶ 56. Milford alleges he "ultimately paid around $1,800 or $1,900 to resolve Defendant's claim that he owed the company for failing to drive the minimum number of miles." *Id.* ¶ 60.

### B.     Milford Sues Roehl.

On August 3, 2022, Milford filed his putative Class and Collective Complaint alleging Roehl violated the FLSA and Wisconsin state law. ECF No. 1. On October 28, 2022, Milford filed his Amended Complaint. ECF No. 8-1.

Relevant to this motion, Milford alleges Roehl's post-employment collections practice violates the FLSA and Wisconsin law.[3] Specifically, Milford alleges "Defendant's practice of recouping the 'value' of the [Training Program] from employees through retroactive deductions is an illegal kickback scheme under the FLSA." *Id.* ¶ 46. Milford also alleges "Defendant's practice of recouping the 'value' of the [Training Program] from employees through retroactive deductions causes them to receive less than minimum wage." *Id.* ¶ 47.

Additionally, Milford alleges Roehl violated Wisconsin's deduction statute. *Id.* ¶ 40. First, he claims Roehl in fact took unlawful deductions from his wages. *Id.* ¶ 64-79. Second, he again targets Roehl's post-employment collections, alleging "Defendant's practice of recouping the

---

[3] Milford also alleges Roehl failed to pay him the minimum wage in certain weeks. *Am. Compl.*, ¶¶ 31-39. Roehl does not seek to dismiss that portion of Milford's minimum wage claims.

4

'value' of the [Training Program] from employees through retroactive deductions" violates Wisconsin's wage deduction statute. *Id.* ¶¶ 48, 54.

Finally, Milford asserts a claim under Wisconsin's Deceptive Trade Practices Act based on alleged misrepresentations contained in the Training Agreement. *Id.* ¶¶ 80-93.

### III.  ARGUMENT

#### A.  Milford's Minimum Wage Claims Based on Roehl's Post-Employment Collections Should Be Dismissed.

Milford alleges Roehl violated the FLSA and Wisconsin's minimum wage law when it sought to collect the outstanding balance on Milford's loan for the Training Program. *Am. Compl.*, ¶¶ 41-47, 55-56, 60-62, 97(b)-(c), 100(b). Binding Seventh Circuit precedent forecloses Milford's claim. *Heder v. City of Two Rivers, Wis.*, 295 F.3d 777 (7th Cir. 2002).

In *Heder*, the City of Two Rivers agreed to pay for the city's firefighters' paramedic training but required any individual who left the department before three years of service to repay the city for (1) the training, (2) any overtime wages received due to that training, and (3) any premium wages the firefighter earned as a result of that training. *Heder v. City of Two Rivers*, 149 F. Supp. 2d 677, 688 (E.D. Wis. 2001). The plaintiff left before the three-year contract period and the city withheld his final two paychecks in full, which only partially satisfied the plaintiff's repayment obligation under the parties' agreement. *Heder*, 295 F.3d at 778. The plaintiff then sued the city, alleging violations under the FLSA and Wisconsin law, and the city counterclaimed for the outstanding balance the plaintiff owed the city. *Id.*

On appeal, the city conceded it should not have withheld the entirety of the plaintiffs' final checks, but argued it was still entitled to recover the outstanding training cost balance from the plaintiff. *Id.* at 779. The Seventh Circuit agreed. The Court held the city was entitled to collect the

5

remaining loan balance "as an ordinary creditor." *Id.* at 779. The Court also concluded the repayment provision as to training costs was enforceable under Wisconsin law. *Id.* at 780-782.

The Court observed that some employers "require the employees to undergo and underwrite their own training, with *none* of the time compensated." *Id.* at 781. And "[i]f an employer may require employees to pay up front, why can't the employer bear the expense but require reimbursement if an early departure deprives the employer of the benefit of its bargain?" *Id.* "A middle ground also would be feasible (and lawful): The employer could require the worker to pay for his own training but lend the worker the money and forgive repayment if he sticks around." *Id.* "A worker who left before the loan had been forgiven would have to come up with the funds from his own sources, just as Heder must do." *Id.* "If that system is lawful, as it is, then the economically equivalent system that Two Rivers adopted must be lawful[,]" because "[t]he cost of training equates to the loan, repayment of which is forgiven after three years." *Id.* at 781-82. Accordingly, the Court concluded the repayment provision as to training costs was valid and enforceable, and that the city was entitled to collect on the plaintiff's training cost debt, less the minimum wages owed to the plaintiff for his final two weeks. *Id.* at 782-83.

Other courts have followed the Seventh Circuit's decision in *Heder* to conclude that employers do not violate the FLSA by seeking repayment for training costs. For example, the Ninth Circuit followed *Heder* in *Gordon v. City of Oakland*, 627 F.3d 1092, 1096 (9th Cir. 2010), concluding "[t]he $5,268.03 payment Gordon made to the City" after his employment ended was "repayment of a voluntarily accepted loan, not a kick-back."

Courts reach the same conclusion even when the training costs are substantial. In *Bland v. Edward D. Jones & Co., L.P.*, 375 F. Supp. 3d 962 (N.D. Ill. 2019), the parties' agreements obligated the plaintiffs to repay the defendant $75,000 in training costs if the plaintiffs left within

three years. Applying *Gordon* and "*Heder*, which constitutes controlling authority in this Circuit," the court held the training cost reimbursement provision did not violate the FLSA. *Bland*, 375 F. Supp. 3d at 977. The court observed "Plaintiffs have not cited, nor has this Court located, any case that suggests employers may not act to collect a debt incurred for an employee's benefit at the termination of their employment on the basis that such a collection is a kickback that would reduce Plaintiffs' wages below the statutory minimum." *Id.* "In fact, courts have held just to the contrary." *Id.* (citing *Vazquez v. Tri-State Mgmt. Co.*, No. 01C5926, 2002 WL 58718, at *5 (N.D. Ill. Jan. 14, 2002)); *see also Park v. FDM Grp. (Holdings) PLC*, No. 16 CV 1520-LTS, 2017 WL 946298, at *3–4 (S.D.N.Y. Mar. 9, 2017) (following *Heder* and *Gordon* and dismissing claim that $20,000 termination fee plaintiff paid after ending her employment violated the FLSA).[4]

Here, Roehl loaned Milford $3,130 for the Training Program and agreed to forgive that debt if Milford drove 40,000 solo miles. Milford "did not drive the minimum number of miles," *Am. Compl.*, ¶ 55, so Roehl "reported Plaintiff to a credit and/or collections agency and it sought to collect approximately $2,300 from Plaintiff." *Id.* ¶ 56. Ultimately, Milford paid less than what his Amended Complaint concedes he owed—paying only "around $1,800 or $1,900" to the collection agency. *Id.* ¶ 60. As *Heder* and subsequent cases confirm, Roehl's post-employment collection practice does not violate the FLSA or Wisconsin law. Rather, Roehl was entitled to, and did, send Milford's remaining debt to collections, as any "ordinary creditor" could do.

---

[4] In a subsequent decision, the *Park* court granted in part the plaintiff's motion for reconsideration and leave to amend as to some of the plaintiff's claims. *Park v. FDM Grp., Inc.*, No. 16-CV-1520-LTS, 2018 WL 4100524, at *4 (S.D.N.Y. Aug. 28, 2018). However, the court *denied* the plaintiff's request as futile as to the FLSA claim predicated on the $20,000 termination fee, concluding its prior order applied the proper analysis.

Accordingly, the Court should dismiss Milford's FLSA and Wisconsin minimum wage claims based on Roehl's post-employment collections.[5]

### B. Milford's Wisconsin Deduction Claim Must Be Dismissed.

Milford asserts two claims under Wisconsin's wage deduction statute, Wis. Stat. § 103.455. First, Milford alleges Roehl took deductions from his wages—$119.38 and $292.95 for the Training Agreement, and two $2.00 deductions for a "Handling Fee." *Am. Compl.*, ¶¶ 74-75. Second, Milford alleges the $1,800 or $1,900 he paid to a collections agency to resolve his debt under the Training Agreement constituted a "retroactive" deduction in violation of Wis. Stat. § 103.455. *Am. Compl.*, ¶ 48, 54, 100(b). The Court should dismiss both claims.

Wisconsin courts apply statutes according to their plain meaning. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 663, 681 N.W.2d 110, 124. In relevant part, Wisconsin Stat. § 103.455 provides:

> No employer may make *any deduction from the wages due or earned by any employee*, who is not an independent contractor, *for defective or faulty workmanship, lost or stolen property or damage to property*, unless the employee authorizes the employer in writing to make that deduction or unless the employer and a representative designated by the employee determine that the defective or faulty workmanship, loss, theft or damage is due to the employee's negligence, carelessness, or willful and intentional conduct, or unless the employee is found guilty or held liable in a court of competent jurisdiction by reason of that negligence, carelessness, or willful and intentional conduct.

*Id.* (emphases added).

In other words, under Wis. Stat. § 103.455, an employer (1) "may [not] make any deduction from the wages due or earned by an[] employee" (2) "for defective or faulty workmanship, lost or

---

[5] Milford's Amended Complaint is unclear regarding whether he alleges Roehl's post-employment collections practice is unlawful under Wisconsin's minimum wage law. To the extent he does, the reasoning in *Heder* applies with equal force and the Court should dismiss that portion of Milford's Wisconsin minimum wage claim too.

8

stolen property or damage to property" (3) "unless the employee authorizes the employer in writing to make that deduction" or certain other considerations are met. Wis. Stat. § 103.455. Under a plain reading, "[t]he statute does not reach every potential deduction by an employer from an employee's wages." *Batteries Plus, LLC v. Mohr*, 2001 WI 80, ¶ 33, 244 Wis. 2d 559, 575, 628 N.W.2d 364, 373. Rather, it "identif[ies] a specific, prohibited employment practice and a penalty for employers engaged in such an activity." *Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wis., S.C.*, 2005 WI App 217, ¶ 51, 287 Wis. 2d 560, 586, 706 N.W.2d 667, 680.

Both of Milford's legal theories fail as a matter of law. First, the deductions related to the Training Program and handling fees were not "for defective or faulty workmanship, lost or stolen property or damage to property." Wis. Stat. § 103.455. In fact, Milford concedes these deductions did not relate to "costs arising from faulty workmanship, loss, theft, or damage." *Am. Compl.*, ¶ 67. Accordingly, Milford's Amended Complaint related to these deductions do not plausibly allege a violation of Wis. Stat. § 103.455. *Batteries Plus*, 628 N.W.2d at 373 (holding Wis. Stat. § 103.455 "does not reach every potential deduction by an employer from an employee's wages"); *Wolnak*, 706 N.W.2d at 680 (holding the statute "identif[ies] a specific, prohibited employment practice and a penalty for employers engaged in such an activity").

Second, regarding Roehl's post-employment collection efforts, § 103.455 only applies to "deduction[s] from [] wages." Wis. Stat. § 103.455. It does not apply to post-employment collections because money an employee pays to a collections agency from his own pocket is not a "deduction" by an employer "from" the employee's "wages." Wis. Stat. § 103.455. Moreover, even if the statute could be read as reaching "retroactive deductions," it still would not apply because Milford concedes that the "retroactive deductions" were also "unrelated to costs arising from faulty workmanship, loss, theft, or damage." *Am. Compl.*, ¶ 48.

9

## C. The Court Should Dismiss Milford's Deceptive Trade Practices Act Claim.

At its core, Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18(1), prohibits false advertising; "that is, [it] protect[s] consumers from unfair marketing practices." *Bundy v. Univ. of Wis.-Eau Claire*, 220 Wis. 2d 357, 582 N.W.2d 504, 1998 WL 265042, at *4 (Wis. Ct. App. May 27, 1998) (unpublished).[6] Accordingly, "under the terms of the statute, a plaintiff asserting a DTPA claim must allege that the defendant has, with the specified intent, made an 'advertisement, announcement, statement or representation ... to the public,' which contains an 'assertion, representation or statement of fact' that is 'untrue, deceptive or misleading,' and that the plaintiff has sustained a pecuniary loss as a result of the 'assertion, representation or statement of fact.'" *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 39, 270 Wis. 2d 146, 169, 677 N.W.2d 233, 245.

### 1. Milford failed to plausibly allege Roehl made a representation to "the public" with the intent to induce an obligation.

Milford's DTPA claim rests entirely on the Training Agreement. *Am. Compl.*, ¶¶ 80-93. However, the Amended Complaint contains no factual allegations that plausibly show that Roehl "ma[d]e, publish[ed], disseminate[d], circulate[d], or place[d]" the Training Agreement "before the public." Wis. Stat. § 100.18(1). Nor are there any factual allegations that Roehl "cause[d], directly or indirectly," the Training Agreement "to be made, published, disseminated, circulated, or placed before the public." *Id.* For example, there is no allegation that Roehl published the Training Agreement in a "newspaper, magazine or other publication," that Roehl distributed the Training Agreement "in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter,

---

[6] Although unpublished, this Court can rely on *Bundy* and other unpublished cases as persuasive authority. E.D. Wis. Civ. Loc. R. 7(j)(1); *see also RMS of Wis., Inc. v. S-K JV¸* No. 13-CV-1071, 2016 WL 1267168, at *2 (E.D. Wis. Mar. 31, 2016) ("Civil Local Rule 7(j)(1) expressly permits the citation of unreported opinions.")

sign, placard, card, label," that Roehl publicized the Training Agreement "over any radio or television station," or that Roehl "in any other way similar or dissimilar to the foregoing," disseminated the Training Agreement in "an advertisement, announcement, statement or representation of any kind to the public." *Id.* Indeed, Milford doesn't even elaborate on how the Training Agreement was disseminated *to him personally*, or whether it induced *him* to do anything. "This is a critical point," as the case law "recognize[s] the difficulty of defining 'public' and the necessity of looking to each case's own [particular] facts and circumstances." *New Life of Crivitz, LP v. Peshtigo River Inn at Crivitz, LLC*, 2015 WI App 68, ¶ 42, 364 Wis. 2d 758, 869 N.W.2d 170 (unpublished)

Absent any allegations on this "critical point," his DTPA claim should be dismissed. *Id.*[7]

### 2. Representations intended to induce entry into an employment relationship are beyond the scope of the DTPA.

Milford's theory under the DTPA is that Roehl used misrepresentations about the Training Program to hire more drivers. *See, e.g., Am. Compl.*, ¶ 84 (alleging the program is a "deceptive ploy" to recruit more drivers). But in *Bundy v. Univ. of Wis.-Eau Claire*, 220 Wis. 2d 357, 582 N.W.2d 504, 1998 WL 265042 (Wis. Ct. App. 1998) (unpublished), the Court rejected the plaintiff's Section 100.18 claim based on "misleading statements that sought to induce him to enter into a contract for employment." *Bundy,* 1998 WL 265042, at *3. The plaintiff argued the DTPA is not limited to "formal sales promotion" and that "the public may include one person." *Id.* at *4. The Court rejected plaintiff's argument, holding it "ignore[d] the context in which these principles

---

[7] In Paragraph 80 of the Amended Complaint, Milford alleges "Defendant violated the DTPA because it made multiple fraudulent representations to the public in the [Training] Agreement with the intent to induce the public to participate in the [Training Program]." This conclusory allegation merely recites the elements of a DTPA and is insufficient to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (mere "formulaic recitation of the elements of a cause of action will not do").

apply; that is, to protect consumers from unfair marketing practices." *Id.* The Court noted its review of Section 100.18 "cases confirm[ed] the scope of its applicability; the reported cases have in common a consumer protection issue." *Id.* "No case deals with a plaintiff's claim of fraudulent statements allegedly made to induce entry into an employment contract." *Id.* In the absence of "case law, legislative history or other authority that demonstrates" the DTPA should apply, the Court affirmed the trial court's judgment against the plaintiff. *Id.*

The Court should reach the same conclusion here. Milford's claim "simply does not fit into any of the[] categories" under the DTPA "and does not fit the purpose of the statute of protecting consumers from unfair marketing practices." *Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, No. 18-CV-381, 2019 WL 699964, at *7 (E.D. Wis. Feb. 20, 2019), *aff'd*, 956 F.3d 950 (7th Cir. 2020) (following *Bundy*). It should be dismissed.

### 3. Milford's DTPA claim should be dismissed for other reasons.

Milford's Amended Complaint identifies three alleged misrepresentations that underlie his DTPA claim: (1) that Roehl misrepresents in the Training Agreement that the Training Program is an "education and training" program, (2) that Roehl misrepresents the value of the Training Program, and (3) that Roehl never disclosed in the Training Agreement that it would take deductions from employees who participated in the Training Program. None can sustain his claim under the DTPA.

#### a. Milford does not plausibly allege Roehl misrepresented the training he would receive, or that such misrepresentation materially induced a pecuniary loss.

Milford alleges the Training Agreement represents that the Training Program is an "education and training" program. *Am. Compl.*, ¶ 81. But the Training Agreement says more than that. It explains that "[t]hrough Roehl's [Training Program] you will acquire valuable experience, training, and information concerning the competent, safe, and efficient operation of

12

tractor/trailers." *Training Agreement* at 1. Nowhere in Milford's Amended Complaint does he allege that the Training Program failed to provide "valuable experience, training, and information concerning the competent, safe, and efficient operation of tractor/trailers." There is no allegation, for example, that Milford was a glorified intern taking coffee orders, or that he spent all of his time with Roehl doing things unrelated to operating a tractor-trailer. To the contrary, he concedes this time was spent driving over-the-road with an experienced truck driver. *Am. Compl.*, ¶¶ 23, 26, 29, 82. And that Roehl *paid* Milford while he drove with and learned from this more experienced driver. *Id.* ¶ 29. Learning from an experienced employee is perhaps the best way for a less experienced employee to receive on-the-job training. Unsurprisingly, the federal government recently instituted a new apprenticeship program that lowers the minimum age for a commercial truck driver so long as the new driver spends sufficient time driving with an experienced driver. *Safe Driver Apprenticeship Pilot Program to Allow Persons Ages 18, 19, and 20 to Operate Commercial Motor Vehicles in Interstate Commerce*, 87 Fed. Reg. 2477-01 (Jan. 14, 2022). Because Milford's Amended Complaint concedes the Training Program provided "experience, training, and information concerning the competent, safe, and efficient operation of tractor/trailers," this portion of his DTPA fails.

Additionally, Milford fails to allege how this purported misrepresentation materially induced him to suffer a pecuniary loss. Specifically, Milford never alleges that he would not have participated in the Training Program had he known the "truth" about the program. Absent that allegation, Milford fails to plausibly assert this alleged misrepresentation materially induced him to suffer a pecuniary loss.

### b. Milford does not plausibly allege Roehl misrepresented the value of the Training Program, or that such misrepresentation materially induced a pecuniary loss.

The Court should likewise dismiss Milford's DTPA claim predicated on his allegation that the "actual 'value' of the Training Program is lower than" $3,130.00 and that Roehl "does not actually 'expend' $3,130.00 on behalf of employees who participate in the program." *Am. Compl.*, ¶ 87.

First, the Training Agreement is a contract. Under that contract, the parties agreed Milford would participate in the Training Program to gain "experience, training, and information concerning the competent, safe, and efficient operation of tractor/trailers." The parties also agreed on the price for Milford's participation in the Training Program —$3,130.00. As discussed above, Milford does not plausibly allege that Roehl failed to live up to its side of the bargain. The fact that Milford now believes he overpaid for the opportunity to participate in the Training Program is not a basis to tear up the parties' agreement because courts do not inquire into "the adequacy of consideration." *Runzheimer Int'l, Ltd. v. Friedlen*, 2015 WI 45, ¶ 49, 362 Wis. 2d 100, 124, 862 N.W.2d 879, 891.

Second, statements regarding the "value" of a product or service is the kind of "puffery" that cannot serve as a basis for a DTPA claim. *See Tietsworth v. Harley–Davidson, Inc.*, 2004 WI 32, ¶ 41, 270 Wis. 2d 146, 677 N.W.2d 233; *State v. American TV & Appliance of Madison, Inc.*, 430 N.W.2d 709, 712 (Wis. 1988). To be sure, Roehl stands behind its valuation of the Training Program. Regardless, Milford's DTPA claim based on Roehl's representations about the "value" of the Training Program fails as a matter of law.

Finally, Milford doesn't claim the Training Program was valueless. Although he claims the "actual" value for the Training Program is "lower" than $3,130.00, Milford offers no specifics. The Amended Complaint is silent regarding whether this difference is $3.00 or $3,000. This

pleading deficiency is particularly important here given that Milford does not allege he in fact paid $3,130—rather, he alleges he "ultimately" only "paid around $1,800 or $1,900." *Am. Compl.*, ¶ 60. Absent any factual allegations regarding the "actual" value of the Training Program, it is impossible to say whether Roehl's alleged misrepresentation *materially* induced Milford to do anything or whether Milford would've still chosen to participate in the Training Program even if he had to pay more than his opinion of the "actual" value.

### c. Milford's non-disclosure theory fails as a matter of law.

Finally, Milford alleges "Defendant never disclosed in the Training Agreement that it would take various deductions from the wages earned by employees who participate in the [Training Program]." *Am. Compl.*, ¶ 89. However, the DTPA does not provide a cause of action for a failure to disclose. *Tietsworth*, 2004 WI 32, ¶ 40. "Under the terms of the statute, a plaintiff asserting a DTPA claim must allege that the defendant has, with the specified intent, made an "advertisement, announcement, statement or representation . . . to the public," which contains an "assertion, representation or statement of fact" that is "untrue, deceptive or misleading," and that the plaintiff has sustained a pecuniary loss as a result of the "assertion, representation or statement of fact." *Id.* ¶ 39 (quoting Wis. Stat. § 100.18(1)). "A nondisclosure is not an 'assertion, representation or statement of fact' under Wis. Stat. § 100.18(1)." *Id.* ¶ 40.

## IV. CONCLUSION

For these reasons, Defendant Roehl Transport, Inc. requests that the Court Dismiss Milford's Amended Complaint.

Dated: November 14, 2022

Respectfully submitted,

*/s/ Christopher J. Eckhart*
Christopher J. Eckhart
James A. Eckhart
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
Phone: 317-687-2414
Fax: 317-687-2414
ceckhart@scopelitis.com
jeckhart@scopelitis.com

*Attorneys for Defendant,
Roehl Transport, Inc.*

4854-8837-4074, v. 11