**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| WILLIAM MILFORD, on behalf of himself and all others similarly situated, | ) ) ) )  C.A. No. 2:22-cv-00879-BHL |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| ROEHL TRANSPORT, INC. | ) ) |
| Defendant. | ) ) ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

Defendant Roehl Transport, Inc. ("Defendant") employed Plaintiff William Milford ("Plaintiff") as a truck driver in the fall of 2020. The employment relationship was exploitative from the start. Defendant did not just fail to pay Plaintiff basic minimum wage for the hours he worked, it also took numerous illegal deductions from his wages even though they were inadequate to begin with. And that was not all. After Plaintiff stopped working for Defendant, the company reported him to a collections agency and extracted nearly $2,000 more from him, purportedly for the "cost" Defendant expended on Plaintiff's "education and training." After the illegal deductions and collections, Plaintiff was paid $201.17 in gross wages for 261 hours of work – about $.77 an hour.

Plaintiff first filed this case on August 3, 2022. After conferring with Defendant's counsel, and receiving additional employment documents from them, Plaintiff filed an assented-to first amended complaint ("FAC") on October 28, 2022. The FAC sets forth four counts. Count I alleges Defendant violated the Fair Labor Standards Act ("FLSA") because it failed to pay Plaintiff minimum wage for all the hours he worked, Count II alleges Defendant subjected

1

Plaintiff to certain deductions that are prohibited by the Wisconsin wage deduction statute, Wis. Stat. § 103.455, Count III alleges Defendant's failure to pay Plaintiff minimum wage violated Wisconsin state wage and hour laws, and Count IV alleges Defendant violated the Wisconsin Deceptive Trade Practices Act ("DTPA") because it made fraudulent misrepresentations to members of the public.

Defendant now moves to dismiss the FAC – in part. Given that it is an objective fact that Defendant failed to pay Plaintiff minimum wage for all the hours he worked regardless of whether Defendant post-employment collections were legal, the motion is potentially dispositive for only two of the four counts – Counts II and IV. *See* FAC, at ¶¶ 31 – 39.[1] Courts I and III cannot be dismissed. Regardless, the motion should be denied in its entirety for three reasons. First, the Seventh Circuit has expressly held that employers cannot recoup training costs from an employee if it will cause him or her to receive an hourly rate that is less than minimum wage. *See Heder v. City of Two Rivers, Wisconsin*, 295 F.3d 777, 779, 782-783 (7th Cir. 2002). Second, Defendant's deduction practice is the archetype of a coercive economic policy barred by the Wisconsin wage deduction statute. Third, Plaintiff sufficiently pled that Defendant made fraudulent misrepresentations to members of the public and that those misrepresentations caused him to suffer a pecuniary loss. Indeed, Defendant collected money from Plaintiff for an "education and training" program it never provided to him.

For all those reasons, as detailed further below, Plaintiff respectfully requests that Defendant's motion be denied.

---

[1] Defendant states that it is not seeking to dismiss Counts I or III to the extent that they are based on the allegations in paragraphs 31 to 39 of the FAC. *See* Defendant's Memorandum ("Memo."), 8 fn 3.

2

**STANDARD**

When evaluating the sufficiency of a complaint, all well-pled facts are accepted as true, and any reasonable inferences are made in the non-movant's favor. *See, e.g., Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022) (citation omitted). "The Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is limited to situations in which, even taking the facts as plaintiff portrays them, the law does not confer a right to relief." *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022). Dismissal under Rule 12(b)(6) is only appropriate if the complaint fails to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff needs to provide "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (citation omitted). If the complaint is plausible, the plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 848 (7th Cir. 2017).

**ARGUMENT**

1. **Plaintiff's minimum wage claims based on Defendant's post-employment collections should not be dismissed.**

   a. *Heder* **undermines Defendant's position.**

Defendant contends that *Heder* "forecloses" Plaintiff's minimum wage claims – Counts I and III – to the extent they are based on the money it collected from Plaintiff post-employment. It is unclear how Defendant could read that decision to support its position. Yes, the Seventh Circuit did find that the employer in *Heder* could recover its training costs from the employee. *See id*. at 780-782. But, as Defendant acknowledges in its papers, *see* Memo., at 9 – 10, the

3

Court also held that employers cannot retroactively recover money from employees for training costs if it will cause them to receive an hourly rate that is less than minimum wage. *See Heder*, 295 F.3d at 779, 782-783. That distinction is small but significant. Even if Plaintiff did legitimately owe Defendant training costs when his employment ended, that did not give Defendant an unfettered right to collect them. Defendant still had a separate obligation to comply with the FLSA and Wisconsin minimum wage law. *See id.*; *see also, e.g., Calderon v. Witvoet*, 999 F.2d 1101, 1107 (7th Cir. 1993) (noting employers "may not reduce the wage below the statutory minimum to collect a debt to the employer").

Like *Heder*, the other cases Defendant cites in support of its position also undercut it. For example, in *Gordon v. City of Oakland*, 627 F.3d 1092, 1096 (9th Cir. 2010), the Ninth Circuit found that the employer could seek repayment for training costs because the plaintiff did not allege that she was paid less than minimum wage for her final workweek or any other week of her employment. *See id.* at 1095 – 1096 (*citing Heder*, 295 F.3d at 779 ("As long as the [employer] paid departing [employees] at least the statutory minimum wage, it could collect the training costs as an ordinary creditor.")). Unlike the facts in *Gordon*, it is an objective fact in this case that Defendant paid Plaintiff less than minimum wage for multiple weeks of his employment, including his final workweek, *see* FAC, at ¶¶ 31 – 39, and those violations of the FLSA and Wisconsin wage and hour laws occurred before Defendant extracted nearly $2,000 more from Plaintiff through post-employment collections. Accordingly, Plaintiff's minimum claims based on Defendant's post-employment collections should not be dismissed. *See Heder*, 295 F.3d at 779, 782-783.

### b. The allegations in the FAC plausibly establish that the money Defendant collected from Plaintiff post-employment was an illegal kick-back.

"The "free and clear" rule prohibits employers from reducing an employee's wages below the required minimum amount by requiring the employee to "kick back" a portion of the employee's wages." *See Jimenez v. GLK Foods LLC*, No. 12-CV-209, 2015 WL 13898852, at *4 (E.D. Wis. Mar. 24, 2015) (quotes in original). With regard to recouping training costs from employees, courts are split on whether such a taking constitutes an illegal kick-back. For example, in *Ketner v. Branch Banking & Tr. Co.*, 143 F. Supp. 3d 370 (M.D.N.C. 2015), the District Court for the Middle District of North Carolina held that the plaintiffs had stated a claim for minimum wage violations under the FLSA based on allegations that the defendant's effort to collect a training "debt" was an illegal kick-back. *See id.* at 384. But in *Gordon*, the Ninth Circuit held that the employee's repayment of training costs was not an illegal kickback. *See id.*, 627 F.3d at 1095.

Critically here, *Gordon* and the other cases that have held employers can recoup costs for training or tuition from employees share a common fact – the existence of a legitimate debt or loan. *See, e.g., id.* at 1096; *see also, e.g., Bland v. Edward D. Jones & Co., L.P.*, 375 F. Supp. 3d 962, 977 (N.D. Ill. 2019); *City of Oakland v. Hassey*, 163 Cal.App.4th 1477, 78 Cal.Rptr.3d 621, 627 -- 628 (2008); *Park v. FDM Grp. (Holdings) PLC*, No. 16 CV 1520-LTS, 2017 WL 946298, at *4 (S.D.N.Y. Mar. 9, 2017) ((*order vacated in part on reconsideration sub nom. Park v. FDM Grp., Inc.*, No. 16-CV-1520-LTS, 2018 WL 4100524 (S.D.N.Y. Aug. 28, 2018)). This matter is distinguished from *Gordon* and those other cases because Plaintiff disputes the legitimacy of the debt/loan for the SJSTP. Indeed, Plaintiff has alleged that Defendant made multiple fraudulent misrepresentations to him about the SJSTP and the money Defendant collected from Plaintiff post-collections cut into the minimum wage he was entitled to be paid. *See* FAC, at ¶¶ 80 – 93.

5

Moreover, it can reasonably be inferred from the allegations in the FAC that Defendant's "loan" to Plaintiff for the SJSP was nothing more than shifting costs of doing business (e.g. training employees) onto him. *See id.* Because Plaintiff's allegations must be taken as true, he has plausibly established at this stage of the case that Defendant took an illegal kick-back from him by recouping money for the SJSTP. And given that the legitimacy of the SJSTP costs is in dispute, it makes good sense not to decide the merits of Plaintiff's claim on a motion to dismiss. As the District Court held in *Ketner*, "factual development of this case will determine whether the costs of [the SJSTP was] a bona fide loan as asserted by [Defendant] or a kick-back … as alleged by [Plaintiff]." *See id.*, 143 F. Supp. 3d at 384.

**2.      The allegations in the FAC plausibly establish that Defendant's wage deduction practices violated the Wisconsin Wage Deduction Statute.**

Defendant contends that Plaintiff failed to plead a claim under the Wisconsin wage deduction statute for two reasons. First, Defendant argues that none of the deductions were covered by the statute regardless of when they occurred because Plaintiff "conceded" that they did not relate to costs arising from faulty workmanship, loss, theft, or damage. *See* Memo., at 13 Second, Defendant contends that the statute is inapplicable to the money it extracted from Plaintiff post-employer because "money an employee pays to a collections agency from his own pocket is not a "deduction" by an employer "from" the employee's "wages."" *See id.* (*citing* Wis. Stat. § 103.455) (quotes in original). As detailed below, both arguments are equally unavailing.

To start, Plaintiff did not "concede" anything. Parties are permitted to plead claims in the alternative, and to state as many claims as they have in the same complaint, regardless of consistency. *See* Fed. R. Civ. P. 8(d)(2) – (3). That is precisely what Plaintiff did. He pled that Defendant's deductions violated Wisconsin wage and hour laws regardless of whether they

6

related to costs arising from faulty workmanship, loss, theft, or damage. *See* FAC, at ¶¶ 48 – 49, 67 – 68. If the deductions were related to one of those items, Defendant violated the Wisconsin wage deduction statute. That is because Plaintiff alleged Defendant failed to follow the statutorily mandated procedure for taking such deductions from employees. *See id*. at ¶¶ 57 – 59, 69 – 72. Given the nature of the deductions (i.e. purported training costs and handling fees), it is eminently reasonable to infer that they were business expenses and Defendant deducted them from Plaintiff's wages to avoid a loss. *See Brant*, 43 F.4th at 664. No more was necessary to give Defendant fair notice of what Plaintiff's claim is under the Wisconsin wage deduction statute and set forth a plausible claim for relief under it. *See* Fed. R. Civ. P. 8(d)(2) – (3); *see also* Fed. R. Civ. P. 12(b)(6); *Reger Development, LLC*, 592 F.3d at 764.

Defendant's second argument fares no better. Tellingly, Defendant did not cite a single authority to support the argument or its interpretations of the terms "deduction," "from," or "wages." *See* Memo., at 13. That is unsurprising. No such authority exists, as Defendant's position is belied by both the intent of the statute and all relevant case law. Indeed, Wisconsin courts have consistently held that the statute was created for one purpose – "to ensure that employes [sic] would not unfairly bear the employer's costs of operating a business." *Erdman v. Jovoco, Inc.*, 181 Wis. 2d 736, 752 (1994). To that end, "the statute prevents [an] employer from arbitrarily deducting hard-earned wages at its prerogative." *Sedlacek v. D. Mark Grp., Inc.*, 2011 WI App 75, ¶ 11 (2011); *see also, e.g., Farady-Sultze v. Aurora Med. Ctr. of Oshkosh, Inc.*, 2010 WI App 99, ¶ 9 (2010) (same); *Conway v. Trick*, 192 Wis.2d 762, *3 (Ct. App. 1995) ("[T]he statute avoids coercive behavior by the employer and ensures that employees do not unfairly bear the employer's costs of operating a business.

7

When analyzing whether the statute covers a particular deduction, it should be construed broadly to effectuate its purpose for three reasons. First, it is a remedial statute. *See, e.g., Erdman*, 181 Wis. 2d at 752, 754; *Batteries Plus, LLC v. Mohr*, 2001 WI 80, ¶ 43. Second, the Wisconsin legislature intended the statute to be broadly applicable. *See Erdman*, 181 Wis. 2d at 752. Third, in Wisconsin, "[t]he public policy of a statute is not limited to the circumstances described in the statute. The public… policy of a statute may be invoked in contexts outside the precise reach of the statute." *Wandry v. Bull's Eye Credit Union*, 129 Wis. 2d 37, 46–47 (1986); *see also Batteries Plus*, 2001 WI 80, ¶ 43 ("Everyone agrees that Wis. Stat. § 103.455 does not cover the precise fact situation involved in this case. But that conclusion is not determinative of the present case. This court has repeatedly stated that "[t]he public policy of a statute is not limited to the circumstances described in the statute.").

Based on those maxims, Wisconsin state and federal courts have consistently rejected each part of Defendant's second argument. For example, in *AnchorBank, FSB v. Hofer*, 2012 WL 8261627 (W.D. Wis. Sept. 20, 2012), the employer argued that the employee's claim was beyond the scope of the statute because it was seeking to recover allegedly ill-gotten stock trading profits directly from him – not to recoup the profits through a deduction from his wages. *See id.* at \*32. Because the employer was effectively seeking to have the employee reimburse it for a business loss, this Court found that the statute covered the employee's claim even though the employer did not literally attempt to take a deduction from the employee's wages. *See id*. at \*33. In *Wandry,* the Supreme Court of Wisconsin denied a motion to dismiss and held that the statute covered the employee's claim even though the employer was asking the employee to reimburse it from the employee's personal asserts – "not deducting the amount of loss from the

plaintiff-employee's paycheck." *Id*., 129 Wis.2d at 46-47.[2] And in *Lopez v. Sears, Roebuck & Co.*, No. 11-CV-728-BBC, 2012 WL 13042617 (W.D. Wis. Apr. 2, 2012), this Court followed the well-settled law and held that employers cannot circumvent the statute by using creative compensation schemes that enable them to take deductions for business expenses from their employees' earnings. *See id*. at *4 (listing cases).

The upshot of these holdings is clear – the statute applies when an employer attempts to recover a business cost from an employee.[3] It does not matter when the employer seeks to recover the cost or whether it seeks to do so through a deduction from the employee's wages or his or her personal assets. Applied here, the allegations in the FAC clearly set forth a plausible claim for relief under the Wisconsin wage deduction statute. Indeed, Plaintiff alleged that Defendant reported him to collections when his employment ended to recover the purported cost it expended for the "education and training" provided to him. It is reasonable to infer that such costs were business expenses and Defendant deducted them from Plaintiff to avoid a loss. *See Brant*, 43 F.4th at 664. That Plaintiff paid the money to a collections agency after his employment ended and Defendant did not deduct it from one of his paychecks is irrelevant. *See Wandry*, 129 Wis.2d at 46-47. Defendant cannot circumvent the statute simply because it devised a compensation practice that enabled it to collect business expenses from Plaintiff after

---

[2] *AnchorBank* and *Wandry* are directly in line with multiple other cases that have rejected Defendant's effort to draw an artificial distinction between deductions from wages and money paid out of an employee's pocket. *See, e.g.*, *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 125 (E.D.N.C. 2011) ("[F]ailing to reimburse plaintiffs for their expenditures is equivalent to the employer paying for these expenses and then improperly deducting them from the employees' pay for the first workweek. Known as a *de facto* deduction, 'there is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear.'" *Id*. (quoting *Arriaga v. Florida Pacific Farms*, LLC, 305 F.3d 1228, 1236 (2002) (internal citation omitted)).

[3] *Batteries Plus* and *Sedlacek* do not hold otherwise. Indeed, this Court has found that the holdings in those case are limited and only apply to situations where an employee was overpaid. *See AnchorBank*, 2012 WL 8261627, at *31 (*Batteries Plus* and *Sedlacek* simply hold that where the money the employer is seeking to recoup from the employee is due to an alleged overpayment by the employer and the employee refuses to pay the amounts requested, the employer's discharge of the employee does not violate the public policy embodied in § 103.455.").

9

his employment ended instead of from his paychecks during his employment. *See Lopez*, 2012 WL 13042617 at *4. Such a compensation scheme clearly subverted the purpose of the statute, which is to prevent employers from arbitrarily collecting business costs from employees. *See, e.g., Sedlacek*, 2011 WI App 75 at ¶ 11; *see also, e.g., Farady-Sultze*, 2010 WI App 99 at ¶ 9; *Conway*, 192 Wis.2d 762, at *3.

**3.      The allegations in the FAC plausibly establish that Defendant violated the DTPA.**[4]

To state a claim under the DTPA, "a plaintiff must allege facts that would fulfill three elements: (1) the defendant made a representation to one or more members of the public with the intent to induce an obligation; (2) the representation was untrue, deceptive or misleading; and (3) the representation materially induced a pecuniary loss to the plaintiff." *Hinrichs v. DOW Chem. Co.*, 2020 WI 2, ¶ 85 (2020). As detailed below, the FAC sets forth sufficient allegations that plausibly establish a claim for relief under the DTPA and Defendant's arguments to the contrary are readily dispatched.

**a.      Defendant made fraudulent misrepresentations to the public.**

Defendant first argues that the DTPA claim fails because there are no allegations that the SJSTP Agreement was ""ma[de], publish[ed], disseminate[d], circulate[d], or place[d]" "before the public."" *See* Memo., at 14. Defendant cites no authority in support of its argument. That is because there is no basis for such a narrow reading of the DTPA. The forms of communications regulated by the DTPA are expansive. *See* generally Wis. Stat. § 100.18. And ""[t]he public" in

---

[4] Defendant's contention that the DTPA prohibits false advertising "at its core" is outdated. *See* Memo., at 14. When the first version of DTPA was passed in 1925, the statute was limited to fraudulent advertising. *See Uniek, Inc. v. Dollar Gen. Corp.*, 474 F. Supp. 2d 1034, 1037 (W.D. Wis. 2007). Since then, "the statute has been amended numerous times to expand its protections." *Id.* "The current version of the statute is no longer limited to advertising or even to sales." *Id.* "It now extends to a false or misleading "representation of any kind" and to inducements to enter into "any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise securities, employment or service." *Id.*

the phrase "cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public" does not require mass dissemination of the assertion, representation or statement."" *State v. Automatic Merchandisers of Am., Inc.*, 64 Wis. 2d 659, 664 (1974). "A single representation to a single person is enough to trigger § 100.18(1)'s protections." *Hinrichs*, 2020 WI 2, at ¶ 65.

Here, Plaintiff alleges that Defendant made multiple fraudulent statements in the SJSTP Agreement. *See* FAC, at ¶¶ 80 – 89. The SJSTP Agreement states that it is a "letter." *See id.* at ¶ 41, Exhibit 1. Accordingly, the DTPA covers the SJSTP Agreement because it regulates statements made by corporations to the public in letters, or in any way that is similar or dissimilar to a letter. *See* Wis. Stat. § 110.18 ("No… corporation… shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public… a… letter… or in any other way similar or dissimilar to the foregoing… [a] statement or representation of any kind to the public relating to such purchase, sale… of such… service… or to the terms or conditions thereof, which …statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."). By tendering the STSTP Agreement to Plaintiff, Defendant made, disseminated, and/or otherwise placed fraudulent statements in a letter (or similar document) before the public. *See generally, e.g., Hinrichs*, 2020 WI 2, at ¶¶ 48 – 49, 85. No further allegations were necessary to plausibly state a claim for relief under the DTPA. *See id.*

b. **Defendant made the fraudulent representations to Plaintiff about the SJSTP to induce him to participate in the program – not to enter an employment relationship.**

Defendant next argues that the DTPA claim fails because Plaintiff's "theory under the [statute] is that [Defendant] used misrepresentations about the [SJSTP] to hire more drivers" but statements intended to induce the public to enter employment relationships are not covered by the DTPA. *See* Memo., at 15. Defendant's argument is based entirely on the narrow ruling in *Bundy v. Univ. of Wis.-Eau Claire*, 220 Wis.2d 357, 1998 WL 265042 (Ct. App. 1998), which is inapposite. In that case, an employee of the University of Wisconsin – Eau Claire brought a DTPA claim against the university for breaching informal promises made to assure him that his employment status was secure. *See Bundy*, 220 Wis.2d 357 at *1. During its analysis, the Court observed that the purpose of the statute was to protect consumers from unfair marketing practices, and that no prior case dealt with a claim of fraudulent statements allegedly made to induce entry into an employment contract. *See id.* at *4. As a result, the Court held that the specific "type of statements" at issue in the case did not satisfy the first element of a DTPA claim and, accordingly, entered summary judgment for the university. *See id.*

A close reading of *Bundy* reveals that it has no application here. As a general matter, *Bundy* is an unpublished decision and is not binding on this Court. More specifically, the facts underlying the employee's DTPA claim in that case are materially different than the facts underlying Plaintiff's claim here. In *Bundy*, the employee alleged the employer violated the DTPA because it made misrepresentations about his job security. *See id.* at *1. Here, Plaintiff alleges Defendant violated the DTPA because it misrepresented the SJSTP as an "education and training" program to induce him to enroll in it – not that Defendant made misrepresentations to him about a job. Defendant's focus on the allegations that relate to its ulterior motive for making

the representations about the SJSTP – i.e. to dupe Plaintiff into team driving – is misplaced. Those allegations support Plaintiff's claim that Defendant's representations about the SJSTP were untrue, deceptive, and/or misleading. That relates to the second element of a DTPA claim, not the first. *See Hinrichs*, 2020 WI 2, at ¶ 85.

### c. Defendant made fraudulent misrepresentations about the SJSTP, and they caused Plaintiff to suffer a pecuniary loss.

Defendant's third argument for dismissal of the DTPA claim is that Plaintiff did not plausibly allege it made misrepresentations concerning the SJSTP or that the misrepresentations induced a pecuniary loss. *See* Memo., 16. Those arguments have no merit. As detailed in the FAC, the gravamen of the DTPA claim is that Defendant described the SJSTP as an "education and training" program but it is not a program at all. It is a team driving job. The "education and training" Plaintiff received while participating in the SJSTP was nothing more than "on the job" experience every employee gains from working – except Plaintiff had an undesirable position, was paid less than minimum wage, and had to pay Defendant for the job. Like an unpaid intern hired to perform the same duties as full-time employees, the SJSTP is a ruse to get individuals to accept an undesirable position and forego wages under the guise that it is an "education and training" program.

Defendant's contention that Plaintiff failed to sufficiently allege its misrepresentations induced him to suffer a pecuniary loss is also unavailing. To plausibly establish that Defendant's misrepresentation induced a pecuniary loss, all Plaintiff needed to plead was "*causation—i.e.*, that the alleged misrepresentation somehow caused them loss." *Haley v. Kolbe & Kolbe Millwork Co.*, 863 F.3d 600, 615 (7th Cir. 2017) (emphasis in original). For purposes of the DTPA, the term "pecuniary loss" encompasses "any *monetary* loss, including the full purchase price." *Create-A-Pack Foods, Inc. v. Batterlicious Cookie Dough Co.*, No. 20-CV-499, 2022

WL 7581020, at *7 (E.D. Wis. Oct. 13, 2022). The allegations easily meet that standard. Indeed, Plaintiff alleged that Defendant collected money from him for the SJSTP but never provided him with "education and training."[5] *See* FAC, at ¶¶ 41 – 44, 55 – 56, 60, 81 – 84. No more was necessary to state a plausible claim that Defendant's fraudulent representations concerning the SJSTP caused Plaintiff to suffer a pecuniary loss. *See, e.g., King v. Link Wild Safaris, LLC*, No. 19-CV-705-SLC, 2021 WL 248444, at *6 (W.D. Wis. Jan. 25, 2021).

    **d.    Defendant made fraudulent misrepresentations about the value of the SJSTP and how much it expended on it for Plaintiff, and those misrepresentations caused him to suffer a pecuniary loss.**

Defendant's fourth argument for dismissal of the DTPA is a medley of irrelevant and unsupported asides. First, the fact that the SJSTP Agreement is a contract is irrelevant to whether Plaintiff has sufficiently alleged a DTPA claim for purposes of a motion to dismiss. Plaintiff did pay Defendant for a service he never received, but he is not pursuing a breach of contract claim or trying to "tear up" the SJSTP Agreement. Plaintiff is seeking to recover damages from Defendant under the DTPA for the fraudulent representations it made about the SJSTP in the SJSTP Agreement. Arguing that a DTPA claim should be dismissed based on contract principles is a fruitless exercise of comparing apples and oranges.

Second, Defendant's express representation that it would "expend on [Plaintiff's] behalf the value of the SJSTP, which is equal to $3,130.00" goes far beyond non-actionable puffery. *See, e.g.*, *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 41, 270 Wis. 2d 146, 171, 677 N.W.2d 233, 245. "Puffery has been defined as 'the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely

---

[5] Based on the facts alleged in the FAC, it can reasonably be inferred that Defendant had no intention to provide Plaintiff with a legitimate "education and training" program at the time it made the representations about the SJSTP to him.

determined.'" *Id.* (*quoting* State v. American TV, 146 Wis.2d 292, 301 – 302 (1988)). Unlike the statements at issue in *Tietsworth*, the truth or falsity of Defendant's express representation that expended $3,130 on Plaintiff's SJSTP can be precisely determined. Accordingly, it is not puffery. *See id.* Defendant either did or did not expend that exact amount of money. There is no middle ground.

Third, Defendant's contention that Plaintiff was required to allege the "actual" value of the SJSTP to state a DTPA claim is meritless. As evidenced by the three elements of a DTPA claim, no such obligation exists. *Hinrichs*, 2020 WI 2, ¶ 85. And furthermore, DTPA claims do not need to be pled with particularity. *See T&M Farms v. CNH Indus. Am., LLC*, No. 19-C-0085, 2020 WL 1082768, at *10 (E.D. Wis. Mar. 5, 2020). The allegations in the FAC are more than sufficient to plausibly establish Plaintiff suffered pecuniary loss as the result of Defendant's fraudulent misrepresentations about the SJSTP.

### e. Defendant's failure to disclose certain deductions taken from Plaintiff's wages during his employment for the SJSTP violated the DTPA.

Defendant's final argument concerning the DTPA claim fails like the others. Plaintiff is not seeking to pursue a claim under the DTPA against Defendant for the deductions taken from his wages during his employment for non-disclosure in the SJSTP Agreement. He is seeking to pursue a claim under the DTPA for those deductions because Defendant made fraudulent statements concerning his financial obligations for the SJSTP. The DTPA not only prohibits corporations from making any untrue, deceptive, or misleading statements or representations to the public relating to the sale of a service, it also prohibits corporations from making such statements concerning the terms or conditions of those services. *See* Wis. Stat. § 100.18. Plaintiff's SJSTP Agreement describes the "value" of the SJSTP – $3,130 – as a debt and the document expressly states that the debt would become payable only if his employment with

Defendant ended before he drove "40,000 paid solo miles." *See* FAC, at ¶ 41, Exhibit 1, 2. Notwithstanding that express representation concerning the terms and conditions of Plaintiff's financial obligations for the SJSTP, Defendant took deductions for the program from Plaintiff's wages during his employment. *See* FAC, at ¶¶ 89 – 93. Given that Defendant collected money from Plaintiff for the SJSTP while he was still employed, the statement that Plaintiff would not be required to pay Defendant for the SJSTP unless his employment ended before he drove the minimum mileage was plainly untrue, deceptive, and/or misleading.

## CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that this Court deny Defendant's partial motion to dismiss.

> Respectfully submitted,
>
> WILLIAM MILFORD, on behalf of
> himself and all others similarly situated,
>
> By his attorneys,
>
> /s/ Brook S. Lane
> _____
> Hillary Schwab, WIED #1043199
> Brook S. Lane*
> FAIR WORK, P.C.
> 192 South Street, Suite 450
> Boston, MA 02111
> (617) 607-3260
> www.fairworklaw.com
> hillary@fairworklaw.com
> brook@fairworklaw.com
>
> *\* WIED ADMISSION PENDING*

Dated: November 23, 2022

16

## CERTIFICATE OF SERVICE

I, Brook S. Lane, hereby certify that on this 23rd day of November, 2022, the foregoing was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing.

/s/ Brook S. Lane
Brook S. Lane