UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| WILLIAM MILFORD, on behalf of himself and all others similarly situated,<br><br>  Plaintiff.<br><br>  v.<br><br>ROEHL TRANSPORT, INC.,<br><br>  Defendant. | Case No. 2:22-cv-00879-BHL |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ...................................................................................................................... 2

    A. Milford's Minimum Wage Claims Based on Roehl's Post-Employment Collections Fail as a Matter of Law. ....................................................................... 2

    B. Milford's Wisconsin Deduction Claim Must Be Dismissed.................................. 4

    C. The Court Should Dismiss Milford's Deceptive Trade Practices Act Claim. ........ 8

        1. Roehl did not make a misrepresentation to "the public." ........................... 8

        2. Milford's DTPA claim should be dismissed because the statute does not apply to representations made to induce an employment relationship................................................................................................ 10

        3. Milford does not plausibly allege Roehl misrepresented the training he would receive, or that such misrepresentation materially induced a pecuniary loss....................................................................................... 11

        4. Milford does not plausibly allege Roehl misrepresented the value of the Training Program, or that such misrepresentation materially induced a pecuniary loss. ......................................................................... 13

        5. Milford's non-disclosure theory fails as a matter of law. ......................... 15

III. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Bates v. Wisconsin Dep't of Workforce Dev.*,
   375 F. App'x 633 (7th Cir. 2010) .......................................................................... 10

*Batteries Plus, LLC v. Mohr*,
   2001 WI 80, 244 Wis. 2d 559, 628 N.W.2d 364 ........................................... 4, 5, 7, 8

*Bland v. Edward D. Jones & Co.*, L.P.,
   375 F. Supp. 3d 962 (N.D. Ill. 2019) ....................................................................... 3, 4

*Bland v. Edward D. Jones & Co., L.P.*,
   No. 18-CV-1832, 2020 WL 1503574 (N.D. Ill. Mar. 30, 2020) ............................... 3

*Brant v. Schneider Nat'l, Inc.*,
   43 F.4th 656 (7th Cir. 2022) ...................................................................................... 5

*Braverman v. Columbia Hosp., Inc.*,
   2001 WI App 106, 244 Wis. 2d 98, 629 N.W.2d 66 ................................................. 7

*Bundy v. Univ. of Wis.-Eau Claire*,
   220 Wis. 2d 357, 582 N.W.2d 504, 1998 WL 265042 (Wis. Ct. App. 1998) .......... 10, 11

*Donovan v. Schlesner*,
   240 N.W.2d 135 (Wis. 1976) .................................................................................... 4

*Enbridge Energy Co., Inc. v. Dane Cnty.*,
   2019 WI 78, 387 Wis. 2d 687, 929 N.W.2d 572 ....................................................... 9

*Enger v. Chicago Carriage Cab Corp.*,
   812 F.3d 565 (7th Cir. 2016) ..................................................................................... 6

*Erdman v. Jovoco, Inc.*,
   181 Wis. 2d 736, 512 N.W.2d 487 (1994) ................................................................. 6

*Farady-Sultze v. Aurora Med. Ctr. of Oshkosh, Inc.*,
   2010 WI App 99, 327 Wis. 2d 110, 787 N.W.2d 433 ........................................... 7, 11

*Gordon v. City of Oakland*,
   627 F.3d 1092 (9th Cir. 2010) ................................................................................... 3

*Hamus v. Bank of New York Mellon*,
   No. 10-CV-682-SLC, 2011 WL 13266807 (W.D. Wis. Sept. 27, 2011) ................. 13

*Heder v. City of Two Rivers, Wisconsin*,
   295 F.3d 777 (7th Cir. 2002) .......................................................................... 1, 2, 3, 8

*Hinrichs v. DOW Chem. Co.*,
   2020 WI 2, 389 Wis. 2d 669, 937 N.W.2d 37 ................................................................ 9, 10, 14

*Ketner v. Branch Banking and Trust Company*,
   143 F. Supp. 3d 370 (M.D.N.C. 2015) ................................................................................. 3

*Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*,
   206 Wis.2d 158, 557 N.W.2d 67 (1996) ............................................................................. 13

*Oneida Cnty. v. Wisconsin Emp. Rels. Comm'n*,
   2000 WI App 191, 238 Wis. 2d 763, 618 N.W.2d 891 ....................................................... 6

*Park v. FDM Grp. (Holdings) PLC*,
   No. 16 CV 1520-LTS, 2017 WL 946298 (S.D.N.Y. Mar. 9, 2017) ..................................... 3

*Peters v. Int'l Harvester Co.*,
   22 N.W.2d 518 (Wis. 1946) ................................................................................................. 4

*Skyrise Constr. Grp., LLC v. Annex Constr., LLC*,
   No. 18-CV-381, 2019 WL 699964 (E.D. Wis. Feb. 20, 2019) ............................... 10, 11, 12

*Slane v. Emoto*,
   582 F. Supp. 2d 1067 (W.D. Wis. 2008) ........................................................................... 14

*SportPet Designs Inc. v. Cat1st Corp.*,
   No. 17-CV-0554, 2018 WL 1157925 (E.D. Wis. Mar. 2, 2018) ................................. 12, 13

*State v. Automatic Merchandisers of Am., Inc.*,
   64 Wis. 2d 659, 221 N.W.2d 683 (1974) .................................................................. 1, 9, 10

*Steinbruner v. The McClone Agency, Inc.*,
   706 N.W.2d 703, 2005 WL 2441344 (Ct. App. Wis. 2005) ............................................ 4, 5

*Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating &
Air-Conditioning Engineers, Inc.*,
   755 F.3d 832 (7th Cir. 2014) ........................................................................................ 10, 11

*Wandry v. Bull's Eye Credit Union*,
   129 Wis. 2d 37, 384 N.W.2d 325 (1986) ............................................................................. 7

*Wolnak v. Cardiovascular & Thoracic Surgeons of Cent.,
   Wis., S.C.*, 2005 WI App 217, 287 Wis. 2d 560, 706 N.W.2d 667 ..................................... 4

**Statutes**

Wis. Stat. Ann. § 100.18 ............................................................................................................ 10
Wis. Stat. § 103.455 ............................................................................................. 1, 4, 5, 6, 7, 8

## I. INTRODUCTION

Plaintiff William Milford's Opposition (ECF No. 11) (Pl.'s Br.) to Defendant Roehl Transport, Inc.'s Motion to Dismiss (ECF No. 9) and supporting memorandum (ECF No.10) (Def.'s Br.) confirms the Court should grant Roehl's Motion.

First, Milford cannot escape the Seventh Circuit's decision in *Heder v. City of Two Rivers, Wisconsin*, 295 F.3d 777 (7th Cir. 2002), which held an employer may, as any ordinary creditor, collect training cost debt without violating the Fair Labor Standards Act's (FLSA) minimum wage requirements or Wisconsin law. That is what Roehl did here. The fact that Milford alleges Roehl failed to pay the minimum wage in three weeks does not insulate him from *Heder*'s holding. In *Heder* itself the employer *conceded* it violated the FLSA, yet the Seventh Circuit still held the employer could recover the training cost debt (less any amount owed under the FLSA). This Court should follow suit and dismiss Milford's minimum wage claims based on Roehl's post-employment collection efforts.

Second, the Court should also dismiss Milford's claim for unlawful wage deductions under Wis. Stat. § 103.455 because Milford has not identified any "deduction[s] from [his] wages" for "defective or faulty workmanship, lost or stolen property or damage to property." *Id.* His contrary arguments contradict the text of the statute and the public policy underlying it.

Finally, the Court should dismiss Milford's claim under the Deceptive Trade Practices Act. Milford has still failed to identify any representation Roehl made to the public or any conduct that would qualify as "untrue, deceptive or misleading representations made in sales promotions." *State v. Automatic Merchandisers of Am., Inc.*, 64 Wis. 2d 659, 665, 221 N.W.2d 683, 686–87 (1974).

## II. ARGUMENT

### A. Milford's Minimum Wage Claims Based on Roehl's Post-Employment Collections Fail as a Matter of Law.

In *Heder*, the Seventh Circuit held that an employer, like any "ordinary creditor," may recover training cost or other debt owed by the employee without violating the FLSA's minimum wage or Wisconsin law. 295 F.3d at779-83.[1] That is precisely what Roehl did here. Roehl agreed to front Milford the $3,130.00 cost for its training program and to forgive the loan if Milford completed 40,000 solo paid miles. *Def.'s Br.* at 7. Milford admits he did not complete the minimum miles before his employment ended. *Am. Compl.*, ¶ 55. Accordingly, Roehl reported Plaintiff to a collections agency. *Id.*, ¶ 56. Milford alleges he "ultimately paid around $1,800 or $1,900 to resolve Defendant's claim that he owed the company for failing to drive the minimum number of miles." *Id.* ¶ 60. Despite *Heder's* holding, Milford now claims Roehl's post-employment collections efforts violated the FLSA and Wisconsin law. Milord's efforts to distinguish *Heder* fall short.

First, Milford says *Heder* doesn't control because, in this case, "it is an objective fact" that Roehl failed to pay the minimum in three weeks during Milford's employment. *Pl.'s Br.* at 4. For starters, Roehl disputes Milford's allegations regarding the three weeks he claims Roehl failed to pay the minimum wage.[2] Regardless, even if a defendant fails to pay the minimum wage in certain weeks, the FLSA does not prohibit that defendant from subsequently collecting training cost debt from the employee. In *Heder*, the employer *conceded* that it violated the minimum wage when it

---

[1] Milford does not dispute that *Heder's* reasoning applies equally to both his FLSA minimum wage claim and his minimum wage claim under Wisconsin law.

[2] It is true Roehl has not moved to dismiss Milford's FLSA claim to the extent it is predicated on these three weeks. That is because resolving the merits of those three weeks requires evidence outside of the pleadings, whereas Milford's minimum wage claim related to Roehl's post-employment collection of training debt fails as a matter of law.

withheld the entirety of the plaintiff's final two checks. *Heder*, 295 F.3d at 779. The Seventh Circuit still held the employer could collect the outstanding training cost debt, less what the employer owed in back wages. *Id.* In other words, while Milford may attempt to recover for the minimum wage violations in the three weeks he identified, he cannot use the FLSA to avoid his obligation to repay to Roehl the money he borrowed. *Id.*; *see also Bland v. Edward D. Jones & Co., L.P.*, No. 18-CV-1832, 2020 WL 1503574, at *7 (N.D. Ill. Mar. 30, 2020) (dismissing minimum wage claim predicated on employer's post-employment collection of training debt, even though employee's adequately plead overtime violation occurred during employment).

Second, citing *Ketner v. Branch Banking and Trust Company*, 143 F. Supp. 3d 370 (M.D.N.C. 2015), Milford claims courts disagree about whether collecting training costs from employees results in an illegal kick-back. *Pl.'s Br.* at 5. But the court in *Ketner* refused to follow *Heder*. *Ketner*, 143 F. Supp. 3d at 383–84. And *Heder* "constitutes controlling authority in this Circuit." *Bland v. Edward D. Jones & Co.*, L.P., 375 F. Supp. 3d 962, 977 (N.D. Ill. 2019) (following *Heder*); *see also Gordon v. City of Oakland*, 627 F.3d 1092, 1096 (9th Cir. 2010) (same); *Park v. FDM Grp. (Holdings) PLC*, No. 16 CV 1520-LTS, 2017 WL 946298, at *3–4 (S.D.N.Y. Mar. 9, 2017) (same). Milford also attempts to distinguish these cases, saying he "disputes the legitimacy of the debt/loan" he received from Roehl. *Pl.'s Br.* at 5. But Milford's argument against the Training Agreement—e.g., that the program was overpriced; that it didn't provide sufficient training, etc.—"are either potential defenses to the enforcement of the contract that Plaintiffs could raise . . . or possible reasons to invalidate the contract as a matter of state law." *Bland*, 375 F. Supp. 3d at 977–78. "They are not reasons to find that the [Training Agreement] violates the FLSA." *Id.* at 978. The Training Agreement "does not violate the FLSA because it is not a kickback, but rather constitutes to a loan that [Milford] accrued." *Id.* "Consequently, any

payment under the [Training Agreement] is not a kickback that would reduce the [Milford's] wages to below the statutory minimum wage." *Id.*

Accordingly, the Court should dismiss Milford's minimum wage claims based on Roehl's post-employment collection efforts.

**B.      Milford's Wisconsin Deduction Claim Must Be Dismissed.**

Under Wis. Stat. § 103.455, an employer (1) "may [not] make any deduction from the wages due or earned by an[] employee" (2) "for defective or faulty workmanship, lost or stolen property or damage to property" (3) "unless the employee authorizes the employer in writing to make that deduction" or certain other considerations are met. Milford's claim should be dismissed.

First, Wis. Stat. § 103.455 does not prohibit "every potential deduction by an employer from an employee's wages." *Batteries Plus, LLC v. Mohr*, 2001 WI 80, ¶ 33, 244 Wis. 2d 559, 575, 628 N.W.2d 364, 373. Rather, it "identif[ies] a specific, prohibited employment practice and a penalty for employers engaged in such an activity"—namely, deductions from wages "for defective or faulty workmanship, lost or stolen property or damage to property." *Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wis., S.C.*, 2005 WI App 217, ¶ 51, 287 Wis. 2d 560, 586, 706 N.W.2d 667, 680; Wis. Stat. § 103.455. Examples include deductions for defective or faulty parts created by a piece-rate worker, *Peters v. Int'l Harvester Co.*, 22 N.W.2d 518 (Wis. 1946), or for inventory shortages. *Donovan v. Schlesner*, 240 N.W.2d 135, 136 (Wis. 1976).

The deductions on which Milford bases his claim under Wis. Stat. § 103.455—deductions for the Training Program and "handling fees"—were not "for defective or faulty workmanship, lost or stolen property or damage to property." Wis. Stat. § 103.455; *see also Steinbruner v. The McClone Agency, Inc.*, 706 N.W.2d 703, 2005 WL 2441344 n.4 (Ct. App. Wis. 2005) (unpublished) (describing training cost deductions as "wholly different" from the categories in Wis. Stat. § 103.455). Indeed, Milford agrees these deductions do not relate to "costs arising from

4

faulty workmanship, loss, theft, or damage." *Am. Compl.*, ¶¶ 48, 67; *see also Complaint*, ¶ 33 (ECF No. 1) (alleging Roehl's deductions "are unrelated to costs arising from faulty workmanship, loss, theft, or damage."); *Pl.'s Br.* at 6-7 (arguing deductions violate Wis. Stat. § 103.455 "regardless of whether they related to costs arising from faulty workmanship, loss, theft, or damage").

Milford now asserts he actually meant to plead in the alternative, *Pl.'s Br.* at 6, but Milford's "alternative" claim fails for the same reason the first one does—it rests on a misreading of the statute. Under Milford's reading, Wis. Stat. § 103.455 prohibits *all* deductions from wages *except* those related to defective or faulty workmanship, lost or stolen property, or damage to property, and an employer can only take those if it "follow[s] the statutorily mandated procedure for taking such deductions." *Pl.'s Br.* at 7. Milford's interpretation inappropriately rewrites the statute, which only prohibits deductions "for defective or faulty workmanship, lost or stolen property or damage to property." *Id.* It does not prohibit "every potential deduction by an employer from an employee's wages." *Batteries Plus,* 2001 WI 80, ¶ 33. Because Milford failed to identify any deduction "for defective or faulty workmanship, lost or stolen property or damage to property," the Court should dismiss his claim under Wis. Stat. § 103.455.[3]

Second, the Court should also dismiss Milford's Wis. Stat. § 103.455 claim based on Roehl's post-employment collection efforts. The statute only prohibits "deduction[s] from [] wages." *Id.* The ordinary meaning of "deduction" is "[t]he act or process of subtracting or taking

---

[3] Milford's reliance on *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022), to argue the Court can simply infer the deductions Milford identified were made to cover Roehl's "business expenses" is likewise misplaced. For starters, *Brant* did not involve a claim Wis. Stat. § 103.455, and the portion of the opinion Milford cites merely sets forth the standard on a Rule 12(b)(6) motion. Moreover, Milford's claim still fails as a matter of law because Wis. Stat. § 103.455 does not apply to every deduction, even those made to cover a "business expense;" rather, it only applies to deductions for defective or faulty workmanship, lost or stolen property or damage to property. *Id.*

away." DEDUCTION, Black's Law Dictionary (11th ed. 2019);[4] *cf. Erdman v. Jovoco, Inc.*, 181 Wis. 2d 736, 758, 512 N.W.2d 487, 495 (1994) (applying ordinary meaning to the word "wages" in Wis. Stat. § 103.455). Wis. Stat. § 103.455 does not apply to the "$1,800 or $1,900" Milford paid to resolve his training debt because it was not a "deduction from [Milford's] wages." Wis. Stat. § 103.455. Rather, Milford paid this money to a collections agency after his employment ended and after he received his final paycheck. *Am. Compl.*, ¶¶ 55-56, 60; *cf. Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 570 (7th Cir. 2016) (observing, under Illinois' deduction statute, "it is inaccurate to characterize the shift fees and other expenses that the drivers voluntarily pay to operate defendants' cabs as a deduction"). Although Milford asserts Roehl failed to cite "a single authority" to support Roehl's interpretation of Wis. Stat. § 103.455, the *text of the statute* itself is the controlling authority Roehl relies on. And the ordinary meaning of "deduction[s] from [an employee's] wages" does not encompass payments an employee voluntarily makes out of his own pocket after his employment ends.

Milford offers no contrary interpretation based on the text of the statute or the ordinary language it uses. Instead, he exclusively relies on pull quotes from cases describing the purpose or public policy behind Wis. Stat. § 103.455. *Pl.'s Br.* at 7-10. Milford's reliance on these cases is misplaced for three reasons. First, "[a] court's function is to interpret and give effect to the statutes, not to rewrite them on the grounds of public policy." *Oneida Cnty. v. Wisconsin Emp. Rels.*

---

[4] The word had the same meaning around the time the statute was enacted. *See also* 1 THE NEW CENTURY DICTIONARY OF THE ENGLISH LANGUAGE 387 (H.G. Emery & K.G. Brewster eds. 1927) (defining "deduction" as "[t]he act of deducting; subtraction; abatement; that which is deducted[.]"); WILLIAM ALLAN NEILSON, ET AL., WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 684 (2d ed. 1942) (defining "deduction" as "[a]ct of deducting, or taking away; subtraction; as, the deduction of the subtrahend from the minuend . . . [t]hat which is deducted; the part taken away, abatement; as, a deduction from yearly rent[.]").

*Comm'n*, 2000 WI App 191, ¶ 23, 238 Wis. 2d 763, 775, 618 N.W.2d 891, 897; *Braverman v. Columbia Hosp., Inc.*, 2001 WI App 106, ¶ 23, 244 Wis. 2d 98, 112, 629 N.W.2d 66, 72 (noting "the purpose of the statute" . . . "does not allow [a court] to rewrite a statute which is otherwise plain and unambiguous on its face"). Second, the cases on which Milford chiefly relies involved claims for wrongful discharge in violation of Wisconsin policy; they did not involve claims seeking to recover directly under Wis. Stat. § 103.455. That distinction is critical because to bring a wrongful discharge claim under Wis. Stat. § 103.455, a plaintiff need not prove a violation of the statute, but only that their discharge violated the public policy behind the statute. *Wandry v. Bull's Eye Credit Union*, 129 Wis. 2d 37, 46, 384 N.W.2d 325, 329 (1986); *Batteries Plus,* 2001 WI 80, ¶ 25. Therefore, courts have approved wrongful termination claims based on conduct that violates the public policy underlying Wis. Stat. § 103.455, but not the statute itself. *See, e.g., Wandry*, 129 Wis. 2d 37, 46. The other cases cited by Milford, which actually involved claims for violations of Wis. Stat. § 103.455, are likewise distinguishable because they all involved "deductions from [] wages." Wis. Stat. § 103.455.

Finally, even when considering public policy, Roehl's plain reading of Wis. Stat. § 103.455 adheres to the public policy and "entire purpose of the statute," which is to prohibit unilateral deductions for defective or faulty workmanship, lost or stolen property, or damage to property "until the employee has an opportunity to show his lack of fault." *Wandry*, 129 Wis.2d at 46, 384 N.W.2d 325; *Farady-Sultze v. Aurora Med. Ctr. of Oshkosh, Inc.*, 2010 WI App 99, ¶ 9, 327 Wis. 2d 110, 117, 787 N.W.2d 433, 436 ("The public policy goal of the statute is to prevent the employer from arbitrarily deducting hard earned wages at its prerogative."). Here, Roehl did not unilaterally deduct the "$1,800 or $1,900" Milford seeks to recover. He paid that money to a collections agency after his employment ended and after he received his final wages. So, Milford had more than "an

7

opportunity to show his lack of fault" before a "deduction" was made—he could have refused to pay anything. The public policy behind Wis. Stat. § 103.455—which prohibits employers from withholding earned wages without giving the employee a chance to object—is not implicated when an employer (1) seeks to recover outstanding debt though post-employment collections, (2) the employee has an opportunity to object, and (3) the employee nonetheless agrees to pay the amount owed. Indeed, after the final paycheck, it is impossible for the employer to make a deduction from wages. Rather, the employee is in the driver's seat and can unilaterally refuse to pay anything, forcing the employer to turn to collections or "to sue the employee for what the employer believes is" owed. *Batteries Plus, LLC v. Mohr*, 2001 WI 80, ¶ 36, 244 Wis. 2d 559, 577, 628 N.W.2d 364, 374. That is what Roehl did here.

In the end, adopting Milford's reading of Wis. Stat. § 103.455 would categorically prohibit employers from recovering debt from employees even after the employment relationship ends and the final paycheck is sent. That reading is at odds with the plain text of the statute, its underlying public policy, and the Seventh Circuit's decision in *Heder*. *Heder*, 295 F.3d at 781 (finding no "reason why Wisconsin would want to extend its precedents to block reimbursement agreements"). The Court should reject Milford's invitation to rewrite Wis. Stat. § 103.455 and dismiss his claim.

### C. The Court Should Dismiss Milford's Deceptive Trade Practices Act Claim.

#### 1. Roehl did not make a misrepresentation to "the public."

Milford does not dispute that his Amended Complaint is entirely *silent* about (1) how the Training Agreement was presented to him, (2) by whom it was presented, (3) when it was presented, (4) in what context it was presented, and (5) anything else about the Training Agreement, aside from the statements in it and the fact that he signed it. Yet he claims he has plausibly alleged the Training Agreement was "made, published, disseminated, circulated, or placed before the public." *Pl.'s Br.* at 11. If Milford were correct, then the DTPA's requirement

8

that the misrepresentation be made to "the public" would be written out of the statute. But Wisconsin courts avoid interpretations that render words duplicative or meaningless. *Enbridge Energy Co., Inc. v. Dane Cnty.*, 2019 WI 78, ¶ 28, 387 Wis. 2d 687, 709, 929 N.W.2d 572, 583.

It is true that, sometimes, "a single representation to a single person is enough to trigger § 100.18(1)'s protections." *Pl.'s Br.* at 11 (quoting *Hinrichs v. DOW Chem. Co.*, 2020 WI 2, ¶ 65, 389 Wis. 2d 669, 699–700, 937 N.W.2d 37, 52, and citing *State v. Automatic Merchandisers of Am., Inc.*, 64 Wis. 2d 659, 664, 221 N.W.2d 683, 686 (1974)). But both *Hinrichs* and *Automatic Merchandisers* involved specific facts, absent from Milford's Amended Complaint, demonstrating the defendant "made" a misrepresentation to "the public" under § 100.18(1). In *Automatic Merchandisers*, the defendant engaged in a marketing scheme to sell vending machines at prices exceeding their actual value. 64 Wis. 2d at 660. The company placed classified advertisements in newspapers and contacted those who responded to the advertisement at their homes with deceptive promotional materials and oral representations. *Id.* The court held the defendant's representations made to prospective purchases who responded to the defendant's newspaper advertisements satisfied "the public" requirement of § 100.18(1). Likewise, in *Hinrichs*, the court simply "decline[d] [the defendant's] invitation to overrule *Automatic Merchandisers*." 2020 WI 2, ¶ 64. It "emphasize[d] that [it was] not determining in this opinion whether [the plaintiff] is in fact a member of 'the public.'" *Id.* In reaffirming *Automatic Merchandisers*, the court relied on the "readily apparent legislative goal underlying the enactment of § 100.18 is to protect all members of [the] public *from fraudulent advertisements and deceptive marketing practices*." *Id.* (citation omitted) (underlining in original) (italics added).

Milford's Amended Complaint alleges nothing like the circumstances in *Hinrichs* and *Automatic Merchandisers*. Nor do those cases hold that a plaintiff can plead a DTPA claim simply

9

Case 2:22-cv-00879-BHL    Filed 12/07/22    Page 13 of 20    Document 12

by identifying the alleged misrepresentation in the complaint without any additional facts showing the statement was "made, published, disseminated, circulated, or placed before the public." Wis. Stat. Ann. § 100.18(1). Because Milford failed to allege facts showing the Training Agreement was placed before the public, the Court should dismiss his DTPA claim.

> **2. Milford's DTPA claim should be dismissed because the statute does not apply to representations made to induce an employment relationship.**

The DTPA does not reach every alleged misrepresentation that might be made by one person to another. Rather, as Milford's own authorities demonstrate, the DTPA "is aimed at protecting the public from untrue, deceptive or misleading representations made in sales promotions." *Automatic Merchandisers*, 64 Wis. 2d at 665; *Hinrichs*, 2020 WI 2, ¶ 49 (DTPA targets "representations to promote the sale of a product"). "More simply put, section 100.18 'applies by its terms to *commercial transactions*.'" *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014) (citation omitted); *Bates v. Wisconsin Dep't of Workforce Dev.*, 375 F. App'x 633, 636 (7th Cir. 2010). Accordingly, the DTPA does not apply to misleading statements intended to induce employment. *Bundy v. Univ. of Wis.-Eau Claire*, 220 Wis. 2d 357, 582 N.W.2d 504, 1998 WL 265042 (Wis. Ct. App. 1998) (unpublished).[5]

Relevant here, Roehl "is not in the business of selling" driver training services. *Thermal Design, Inc.*, 755 F.3d at 837. Nor does Milford allege otherwise. Indeed, he alleges Roehl "is a multi-modal motor carrier based in Wisconsin that offers a variety of transportation services nationwide." *Am. Compl.*, ¶ 15. It "is a Wisconsin corporation that employs individuals (including

---

[5] Although *Bundy* is unpublished this Court can rely on it as persuasive authority. *Def.'s Br.* at 10 n.6; *see also Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, No. 18-CV-381, 2019 WL 699964, at *7 (E.D. Wis. Feb. 20, 2019), *aff'd*, 956 F.3d 950 (7th Cir. 2020) (following *Bundy*).

Plaintiff) as drivers." *Id.*, ¶ 11. According to Milford, Roehl does not "sell" potential drivers on the Training Program; rather, he claims drivers must participate if they want to drive for Roehl. *Am. Compl.*, ¶ 22. Moreover, the Amended Complaint repeatedly alleges that the Training Program is merely a device to get drivers in the door so Roehl can increase its number of team drivers. *Am. Compl.*, ¶¶ 82-84, 88. In other words, at least according to Milford, Roehl uses the alleged misrepresentations in the Training Agreement to induce the employment of individuals as team drivers, not to sell driver training services. *Id.*; *see also Pl.'s Br.* at ("As detailed in the FAC, the gravamen of the DTPA claim is that Defendant described the SJSTP as an 'education and training' program but it is not a program at all. It is a team driving job.").[6] This theory is not actionable under the DTPA. *Bundy*, 220 Wis. 2d 357 (observing "[n]o case deals with a plaintiff's claim of fraudulent statements allegedly made to induce entry into an employment contract").[7]

> **3.  Milford does not plausibly allege Roehl misrepresented the training he would receive, or that such misrepresentation materially induced a pecuniary loss.**

In its Motion, Roehl explained that Milford failed to plausibly allege how Roehl misrepresented the nature of the Training Program or the nature of the training Milford would receive through his participation in the program. *Def.'s Br.* at 12-13. Milford does not dispute that he trained with experienced driver, and that the federal government itself has recognized the

---

[6] To be clear, Roehl disputes Milford's allegations that the Training Program is simply a guise for Roehl to increase the number of team drivers. Indeed, the Training Program culminates in the trainee completing 40,000 *solo* miles.

[7] Without explanation, Milford claims the Court should simply ignore his allegations regarding Roehl's supposed "ulterior motive for making the representations about the" Training Program because, somehow, those allegations are only relevant to whether the alleged misstatements were "untrue, deceptive, and/or misleading." *Pl.'s Br.* at 13. If that were true, *Bundy*, *Thermal Design*, and *Bates* would have been decided differently. Contrary to Milford's suggestion, these allegations are relevant because they confirm his claim "simply does not fit into any of the[] categories" under the DTPA "and does not fit the purpose of the statute of protecting consumers from unfair marketing practices." *Skyrise Constr. Grp., LLC*, 2019 WL 699964, at *7.

benefits of pairing inexperienced truck drivers with seasoned professional drivers. *Id.* Instead, he complains he only received "on the job" experience as a truck driver. *Pl.'s Br.* at 13. But that's precisely what Roehl said it offered—an on-the-job training program, paired with an experienced driver, through which Milford would gain "valuable experience, training, and information concerning the competent, safe, and efficient operation of tractor/trailers." ECF No. 8-2 at 2. Because Milford fails to plausibly allege or even explain how Roehl misrepresented the training he would receive, the Court should dismiss his DTPA claim.[8]

Additionally, Milford's DTPA claim should also be dismissed because he failed to plausibly allege that Roehl's alleged misrepresentations about the training he would receive materially induced him to suffer a pecuniary loss. Milford concedes this requires a causal link between Roehl's alleged misrepresentations and his pecuniary loss. *Pl.'s Br.* at 13 (agreeing a plaintiff must show "causation"). The "plaintiff must prove that a defendant's misrepresentations were 'a significant factor contributing to [its] decision' to buy, rent, or use a 'product or item' and that it 'sustained a monetary loss as a result.'" *SportPet Designs Inc. v. Cat1st Corp.*, No. 17-CV-0554, 2018 WL 1157925, at *6 (E.D. Wis. Mar. 2, 2018).

Here, the only pecuniary loss Milford identifies is the money Roehl collected for the Training Program. *Pl.'s Br.* at 14. But Milford only suffered that "loss" because his employment terminated before he drove 40,000 solo miles. Critically, Milford fails to allege anywhere, either in his Amended Complaint or in his Opposition, that he left the Training Program early because of Roehl's alleged misrepresentations concerning the Training Program. Absent that, there is no

---

[8] Milford's analogy to an "unpaid intern" misses the mark. For starters, unpaid interns are unpaid in recognition of the fact that they gain valuable experience by through their internship. And here, unlike the unpaid intern who is only compensated through experience, *Roehl paid Milford* for his participation in the Training Program.

causal link between Roehl's alleged misrepresentations and Milford's pecuniary loss, and his DTPA claim must be dismissed. *SportPet Designs Inc.*, 2018 WL 1157925, at *6; *Hamus v. Bank of New York Mellon*, No. 10-CV-682-SLC, 2011 WL 13266807, at *9 (W.D. Wis. Sept. 27, 2011).

> **4. Milford does not plausibly allege Roehl misrepresented the value of the Training Program, or that such misrepresentation materially induced a pecuniary loss.**

Milford's DTPA claim based on Roehl's alleged misrepresentations of the "value" of the Training Program should likewise be dismissed. First, the fact that the Training Agreement is a contract is not "irrelevant." *Pl.'s Br.* at 14. To state a DTPA claim, Milford must identify a misrepresentation made by Roehl. Here, Milford claims Roehl mispresented that the value of the Training program was $3,130.00. But the only evidence for this representation is the parties' Training Agreement. The contract set forth Roehl's and Milford's respective obligations and represents the parties' "meeting of the minds" concerning the training Roehl agreed to provide and the price Milford agreed to pay. *Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis.2d 158, 177–78, 557 N.W.2d 67, 75–76 (1996). Because the Amended Complaint does not contain sufficient factual allegations to plausibly allege that Roehl failed to live up to its end of the bargain, *see supra* Section II.C.3, Milford is bound by his agreement on the price.

Second, Milford's argument that "the truth or falsity of Defendant's express representation that expended $3,130 on Plaintiff's SJSTP can be precisely determined" misses the point. *Pl.'s Br.* at 15. Roehl set the "price" of the Training Program—$3,130—and Milford accepted that price. Milford admits he did not pay this money upfront. Rather, Roehl loaned him this amount (and

13

would have forgiven it had Milford completed 40,000 solo miles). At that point, Roehl had expended the $3,130 on Milford's behalf.[9]

Finally, even in his Opposition, Milford does not argue that the Training Program was valueless. *Pl.'s Br.* at 15. Instead, he argues that he need not specify the actual value of the Training Program in his Complaint. *Id.* (citing *Hinrichs*, 2020 WI 2, ¶ 85). But in *Hinrichs*, the court reiterated that, to state a DTPA claim, the plaintiff must allege facts that show "the representation materially induced a pecuniary loss to the plaintiff." *Hinrichs*, 2020 WI 2, ¶ 85. There, "the complaint amply allege[d] that the representation materially induced a pecuniary loss to Hinrichs." *Id.* "Hinrichs allege[d] that Dow's representations destroyed his ability to sell further JeeTops panels by negatively affecting the product's reputation." *Id.* It "specifically reference[d] negative commentary on social media and elsewhere within the Jeep enthusiast community, as well as allegations that high profile customers stopped purchasing the product and that dealers dropped JeeTops from their product lines." *Id.*

Here, Milford alleges no factual allegations that, if true, demonstrate Roehl's statements regarding the "value" of the Training Program induced him to suffer a pecuniary loss. Indeed, Milford is still silent regarding whether Roehl's alleged misrepresentation regarding the $3,130 "value" of the Training Program materially induced Milford to do anything or whether Milford would have still chosen to participate in the Training Program even if he knew it was overpriced.

---

[9] Milford also ignores the "value" of the Training Program need not be strictly limited to the costs Roehl expended training Milford, *see Pl.'s Br.* at 14-15; rather, it would also include the value Milford would gain through his participation. If the Court disagrees with Roehl and concludes Milford plausibly alleges that Roehl is in the business of actually *selling* training services, nothing in the DTPA requires sellers to price their services *at cost*. That is why statements regarding "value" are non-actionable opinion or puffery. *Slane v. Emoto*, 582 F. Supp. 2d 1067, 1085 (W.D. Wis. 2008). A seller would not stay in business if they valued and sold their goods only at cost.

### 5. Milford's non-disclosure theory fails as a matter of law.

Milford's claim that Roehl failed to disclose deductions should be dismissed because the DTPA does not apply to alleged omissions or failures to disclose. *Def.'s Br.* at 15. In seeking to avoid dismissal, Milford attempts to rewrite his Amended Complaint. In Paragraph 89, he alleges "Defendant never disclosed in the SJSTP Agreement that it would take various deductions from the wages earned by employees who participate in the SJSTP." *Am. Compl.*, ¶ 89. But in his Opposition, Milford claims he really meant to assert that Roehl's deductions under the Training Agreement violated the DTPA because Roehl "expressly state[d] that the debt would become payable only if [Milford's] employment with Defendant ended before he drove '40,000 paid solo miles,'" but Roehl took these deductions before Milford's employment ended. *Pl.'s Br.* at 15-16. First, the Court should reject this new theory because it was not asserted in Milford's Amended Complaint. Milford expressly alleged in the Amended Complaint that Roehl's deductions under the Training Program violated the DTPA because Roehl failed to disclose those deductions. As the parties agree, that is not a viable claim under the DTPA and should be dismissed.

Second, Milford's new claim fails on the merits. Milford "worked as a truck driver for Defendant from approximately September to October 2020." *Am. Compl.*, ¶ 5. But the two deductions Roehl made for the Training Agreement occurred after Milford's employment ended—on his final paychecks dated November 5, 2020 and November 12, 2020. *Am. Compl.*, ¶¶ 89-93. Because Milford's own allegations foreclose his new theory, the Court should dismiss it.

### III.   CONCLUSION

For these reasons, Defendant Roehl Transport, Inc. requests that the Court Dismiss Milford's Amended Complaint.

Dated: December 7, 2022

Respectfully submitted,

*/s/ Christopher J. Eckhart*
Christopher J. Eckhart
James A. Eckhart
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
Phone: 317-687-2414
Fax: 317-687-2414
ceckhart@scopelitis.com
jeckhart@scopelitis.com

*Attorneys for Defendant,
Roehl Transport, Inc.*

4888-1002-9890, v. 7