UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM MILFORD,

        Plaintiff,

v.                                                Case No. 22-cv-0879-bhl

ROEHL TRANSPORT, INC,

        Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

        In this lawsuit, Plaintiff William Milford (Milford), who worked as a truck driver for Defendant Roehl Transport, Inc. (Roehl) during the fall of 2020, seeks to represent a class of similar former Roehl employees in challenging Roehl's enforcement of a contract requiring employees who leave employment early to repay loans covering their on-the-job training costs. Milford signed such an agreement when he started with Roehl, but his employment ended before he satisfied the condition (driving 40,000 solo miles) necessary for forgiveness of the debt. Accordingly, Roehl took deductions for the loan from Milford's paychecks and referred the balance of the debt to a collection agency. After initially paying the collection agency, Milford later filed this action. In his amended complaint, Milford alleges Roehl failed to pay him the minimum wage for all hours worked in violation the Fair Labor Standards Act (FLSA), 29 U.S.C. §201 *et seq.* (Count I) and Wisconsin's state wage and hour laws (Count III). He also alleges Roehl subjected him to certain deductions that were prohibited by the Wisconsin wage deduction statute, Wis. Stat. §103.455 (Count II). Finally, Milford claims Roehl violated the Wisconsin Deceptive Trade Practice Act (DTPA) because it made fraudulent misrepresentations to the public (Count IV). On November 14, 2022, Roehl filed a motion to dismiss the amended complaint. For the reasons stated below, Roehl's motion to dismiss is granted in part and denied in part.

# FACTUAL BACKGROUND[1]

Milford worked for Roehl as a truck driver for approximately two months – from September to October 2020. (ECF No. 8-1 ¶5.) Roehl requires certain new hires to participate in the Roehl Transport Safety and Job Skills Training Program (Training Program) when they start driving for the company. (*Id.* ¶¶22-23.) The Training Program consists of having new hires drive over-the-road with a lead driver in a single truck. (*Id.* ¶23.) Roehl pays "trainee pay" to employees who participate in the Training Program. (*Id.* ¶25.) "Trainee pay" is a flat daily rate for each day the employee is training over-the-road with the lead driver. (*Id.* ¶26.) The "trainee pay" typically yields an average hourly rate that is below the minimum wage for each hour that an employee in the Training Program worked each week. (*Id.* ¶27.) Before beginning the Training Program, Roehl requires the employee to sign an Agreement for the Value of the Safety and Job Skills Training Program, Tuition Reimbursement, and Acknowledgement of Longevity Bonus (Training Agreement).[2] (*Id.* at ¶41, ECF No. 8-2.)

The Training Agreement states that Roehl's Training Program will provide the employee with "valuable experience, training, and information concerning the competent, safe and efficient operation of tractor/trailers." (ECF No. 8-2 at 2.) Roehl further commits to "expend a significant amount of time, money, and effort to provide [the new employee] with first class job training through [the] program." (*Id.*) More specifically, "in return for [Milford's] admission to Roehl's [Training Program], Roehl [obligated itself to] expend on [his] behalf the value of the [Training Program], which is equal to $3,130.00." (*Id.* at 3.) The agreement explains that "[t]he value of the [Training Program] is in effect a loan to you. It's a loan you'll never have to pay back as long as you work for us as a driver and complete 40,000 paid solo miles. Once you have completed 40,000 paid solo miles, this debt is completely forgiven, and you owe us nothing for the [Training Program]." (*Id.* at 2.)

Under the terms of the Training Agreement, Milford agreed to repay Roehl for the value of the cost of Training Program if he did not "complete 40,000 paid solo miles" before leaving the

---

[1] The Factual Background is based on the allegations in Milford's amended complaint (ECF No. 8-1), which are accepted as true for the purpose of Roehl's motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

[2] The Training Agreement is attached as an exhibit to Plaintiff's amended complaint. (ECF No. 8-2.) "It is … well-settled in this circuit that 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.'" *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (citation omitted).

company. (*Id.* at 3.) "This debt goes away when you have completed 40,000 paid solo miles. Otherwise, this debt is all due and payable upon termination of your employment." (*Id.*) Roehl also agreed that no interest would accrue on Milford's loan while he was employed. (*Id.*) Milford "agree[d] to allow Roehl to offset and deduct any and all amounts owed by [Milford] pursuant to this Agreement from any pay owed by Roehl to [Milford], provided that any deduction will not contravene state or federal law or reduce [his] wage to an extent prohibited by any state or federal law." (*Id.*) "If any such offset or deduction is made, [Milford was] still obligated to pay Roehl the balance owing for any payments made to [the] driving school or lender or the value of [the] training that is not deducted from [Milford's] pay, as well as any advances on [Milford's] pay received but not yet earned." (*Id.* at 4.)

Ultimately, Milford "did not drive the minimum number of miles required by the [Training Program] before his employment ended with Defendant." (ECF No. 8-1 ¶55.) Accordingly, Roehl reported Milford to a credit and/or collections agency and sought to collect approximately $2,300 from him. (*Id.* ¶56.) Milford "ultimately paid around $1,800 or $1,900 to resolve Defendant's claim that he owed the company for failing to drive the minimum number of miles." (*Id.* ¶60.)

## STANDARD OF REVIEW

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Roberts*, 817 F.3d at 564 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Roberts*, 817 F.3d at 564–65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Iqbal*, 556 U.S. at 678). The Court will assume that all factual allegations are true but disregard conclusory statements. *Iqbal*, 556 U.S. at 678.

## ANALYSIS

In his amended complaint, Milford asserts four counts, all based on Roehl's alleged violation of the FLSA and Wisconsin law. In Counts I and III, Milford alleges that Roehl failed to pay him the minimum wage in violation of the FLSA and the Wisconsin Wage and Hour statutes.

(*Id.* ¶¶31-39.) In Count II, Milford alleges that Roehl violated Wisconsin's wage deduction statute. (*Id.* ¶40.) Finally, in Count IV, Milford asserts a claim under Wisconsin's Deceptive Trade Practices Act based on alleged misrepresentations contained in the Training Agreement. (*Id.* ¶¶80-93.) Roehl has moved to dismiss *most* of Milford's claims. Its motion papers make clear that Roehl does not seek to dismiss Milford's claim that Roehl failed to pay him the statutorily prescribed minimum wage. (ECF No. 10 at 8 n.3.) Roehl, however, seeks to the dismiss the remaining parts of the amended complaint.

### I. Roehl's Attempt to Collect a Loan Made to a Former Employee Is Lawful and Does Not Violate the FLSA or Wisconsin Law.

Counts I and III of Milford's amended complaint assert violations of the FLSA and Wisconsin wage and hour law based on Roehl's "practice of recouping the 'value' of the [Training Program] from employees through retroactive deductions," which he characterizes as "an illegal kickback scheme." (*Id.* ¶46.) Milford also alleges Roehl's "practice of recouping the 'value' of the [Training Program] from employees through retroactive deductions causes them to receive less than minimum wage." (*Id.* ¶47.) Both claims run afoul of binding Seventh Circuit authority, which requires dismissal, at least in part.

The Seventh Circuit long ago confirmed the legality of loan programs like Roehl's. In *Heder v. City of Two Rivers,* 295 F.3d 777, 780-83 (7th Cir. 2002), the Court held that employers can make loans to employees for training costs and then recoup those costs post-employment without violating the FLSA or the Wisconsin state wage and hour laws. . *Heder* involved an agreement between the City of Two Rivers, Wisconsin and the city's firefighters in which the city agreed to pay for paramedic training for firefighters but also required firefighters who left the department before three years of service to repay the city for (1) the training, (2) any overtime wages received due to that training, and (3) any premium wages the firefighter earned as a result of that training. *Id.* at 778, 780-83. A former firefighter who left before his three years of required service sued and prevailed, but only in the district court. *Heder v. City of Two Rivers*, 149 F. Supp. 2d 677 (E.D. Wis. 2001) (finding the training repayment agreement violated the FLSA). His victory was short-lived, as the Seventh Circuit reversed on appeal, holding that while an employer must pay a minimum wage and overtime to its non-exempt employees, that requirement does not preclude the employer from offering loans to employee to cover training costs. 295 F.3d at 783. The Court of Appeals also made clear that an employer that makes such a loan may not recoup the

debt from an employee that departs by withholding pay in a manner that puts the employee below the minimum wage. The employer can, however, seek repayment via other means. *Id.* at 782-83. In reaching these conclusions, the Seventh Circuit explained that employers often require "employees to undergo and underwrite their own training, with *none* of the time compensated." *Id*. at 781 (emphasis in original). If an employer can "require employees to pay [for this training themselves] up front," it can also certainly bear the expense itself and then "require reimbursement if an early departure deprives the employer of the benefit of its bargain." *Id.* The Court then acknowledged that "[a] middle ground also would be feasible (and lawful): The employer could require the worker to pay for his own training but lend the worker the money and forgive repayment if he sticks around." *Id.* (citing *Milwaukee Area Joint Apprenticeship Training Comm. v. Howell*, 67 F.3d 1333 (7th Cir. 1995)). The Court concluded that Two Rivers had simply adopted "the economically equivalent system," which was also lawful. *Id.* It was clear, however, that the FLSA still applied. Accordingly, the plaintiff was entitled to keep "any compensation that the FLSA specified as a statutory floor below which no contract may go." *Id.* at 779. This included "at least the statutory minimum wage for his final two pay periods (leaving the City to collect any residue as an ordinary creditor) . . . [plus] time and a half for any overtime hours for which the FLSA requires that premium." *Id.* Beyond this, Two Rivers was entitled to collect any residual amount, including the difference between the statutory minimum and the total of the paychecks, as an ordinary creditor. *Id.*

Defendant relies upon *Heder* and a later Ninth Circuit case, *Gordon v. City of Oakland*, 627 F.3d 1092 (9th Cir. 2010), to insist that Milford's FLSA claim fails as a matter of law to the extent it is premised on a challenge to the propriety of Roehl's loan to Milford and its post-employment collection efforts. (ECF No. 10 at 10.) In *Gordon*, the Ninth Circuit relied on *Heder* in rejecting similar claims made by a former police officer against the City of Oakland. *Id.* at 1095-96. A former police officer had repaid the city for training costs pursuant to a training reimbursement agreement, a practice the Ninth Circuit agreed did not constitute an illegal payment or kickback under the FLSA. *Id.* at 1095. The Ninth Circuit explained that "[a]s long as the city paid departing firefighters at least the minimum wage, it could collect the training costs as an ordinary creditor." *Id.* at 1096 (citing *Heder*, 295 F.3d at 779). Because the City of Oakland had paid Gordon at least the minimum wage for her final week of work, the city was free to seek repayment of her "training debt" as an "ordinary creditor." *Id.*

Milford tries to evade these holdings by citing a more recent North Carolina district court case, *Ketner v. Branch Banking and Trust Company*, 143 F. Supp. 3d 370, 383-84 (M.D.N.C. 2015), which refused to follow *Heder* and *Gordon*. (ECF No. 11 at 5.) In *Ketner*, the district court ruled that any efforts to collect training costs from employees violated the FLSA and constituted efforts to obtain an illegal kick-back for the employer. 143 F. Supp. 3d at 384. Milford's effort fails because, although he may not like it, *Heder* remains binding on this Court. As controlling authority in this circuit, *Heder* compels dismissal of Milford's claims to the extent they challenge Roehl's requirement that Milford reimburse the loan for training costs, so long as Roehl paid him at least the minimum wage.

Pursuant to the Training Agreement that Milford signed, Roehl loaned him $3130 for the Training Program and agreed to forgive that debt if Milford drove 40,000 solo miles. (ECF No. 8-2 at 2.) Milford "did not drive the minimum number of miles required by the [Training Agreement] before his employment ended with [Roehl]." (ECF No. 8-1 ¶55.) Roehl then "reported [Milford] to a credit and/or collections agency and it sought to collect approximately $2,300 from [Milford]. (*Id.* ¶56.) Roehl sent Milford's debt to collections, just as any ordinary creditor could do. Milford "ultimately paid around $1,800 or $1,900 to resolve Defendant's claim that he owed the company for failing to drive the minimum number of miles." (*Id.* ¶60.) As *Heder* explained, while an employer may not withhold wages such that they fall below the statutory minimum, it may seek recoupment of costs pursuant to a contract. 295 F.3d at 779, 781-83 ("Nor can we seen any reason why Wisconsin would want to extend its precedents to block reimbursement agreements such as the one Two Rivers made with it union.").

Milford's attempt to "dispute[] the legitimacy of the debt/loan" does not help him. (ECF No. 11 at 5.) He contends the Training Program was overpriced and failed to provide sufficient training. Both "are either potential defenses to the enforcement of the contract that [Milford] could raise . . . or possible reasons to invalidate the contract as a matter of state law." *Bland v. Edward D. Jones, & Co*, 375 F. Supp. 3d 962, 977-78 (N.D. Ill. 2019). But "[t]hey are not reasons to the find the [Training Agreement] violates the FLSA." *Id.* at 978. In *Bland,* the district court held that any of defendant's later attempts to recoup training costs, no matter how unreasonable those costs were in relation to the training received, does not have anything to do with whether the wages were paid "free and clear." *Id.* at 972, 977. And, as noted in *Bland,* whether Milford received the benefit of his bargain, the Court agrees with Roehl that while Milford may attempt to recover the

minimum wage violations for the three weeks he identified, he cannot use the FLSA to avoid his obligation to repay Roehl the money he borrowed. The Training Agreement "does not violate the FLSA because it is not a kickback, but rather constitutes a loan that [Milford] accrued." *Id.* at 978.

Accordingly, to the extent, Milford's FLSA claim and Wisconsin minimum wage claim are based on Roehl's post-employment collections, those claims are dismissed. To the extent Milford's claim is based on his allegation Roehl failed to pay him at least the minimum wage for all hours worked in violation of the FLSA (Count I) and Wisconsin Wage and Hours law (Count III), Roehl's motion to dismiss is denied.

## II. Milford's Wisconsin Wage Deduction Claim Fails as a Matter of Law.

In Count II, Milford claims Roehl violated Wisconsin's wage deduction statute, Wis. Stat. §103.455, in two ways. First, he challenges deductions Roehl made while he was still employed, in particular deductions of $292.95 and $119.38 for amounts due under the Training Agreement and a deduction of $2.00 (twice) for a "Handling Fee" on November 5, 2020 and November 12, 2022. (*Id.* ¶¶64-79.) Second, citing the $1,800 or $1,900 he paid to the collection agency for the training debt, Milford alleges Roehl's post-employment "practice of recouping the 'value' of the [Training Program] from employees through retroactive deductions." (*Id.* ¶¶48, 54.) Neither of these efforts suffices to allege a statutory violation.

Wis. Stat. §103.455 provides:

> No employer may make any deduction from the wages due or earned by any employee, who is not an independent contractor, for defective or faulty workmanship, lost or stolen property or damage to property, unless the employee authorizes the employer in writing to make that deduction or unless the employer and a representative designated by the employee determine that the defective or faulty workmanship, loss, theft or damage is due to the employee's negligence, carelessness, or willful and intentional conduct, or unless the employee is found guilty or held liable in a court of competent jurisdiction by reason of that negligence, carelessness, or willful and intentional conduct. If any deduction is made or credit taken by any employer that is not in accordance with this section, the employer shall be liable for twice the amount of the deduction or credit taken in a civil action brought by the employee.

Milford's first deduction challenge fails based on the plain wording of both the Training Agreement and the statute. In the Training Agreement, Milford "agree[d] to allow Roehl to offset and deduct any and all amounts owed . . .pursuant to this Agreement from any pay owed by Roehl

to [Milford], provided that any deduction will not contravene state or federal law or reduce [Milford's] wage to any extent prohibited by any state or federal law." (ECF No. 8-2 at 3.) Milford thus *authorized* Roehl to make the deductions it made provided the deductions did not reduce his wages to an extent prohibited by law. As noted in *Heder*, there is nothing illegal about this contractual arrangement. The deduction of these amounts complies with the plain terms of the statute and Seventh Circuit law.

Milford's second improper deduction theory fails for similar reasons. Section 103.455 prohibits an employer from making "any deduction from the wages due or earned by an[] employee." In other words, the alleged offensive deduction must not be deducted from "wages due or earned." Wis. Stats §103.455. Milford alleges he affirmatively paid $1,800 or $1,900 to a collection agency. Affirmative payments to a collection agency are not *deductions* from wages due or earned. Milford cannot manufacture a statutory violation by recategorizing these payments and calling them deductions. Because his own allegations place these outside the statutory prohibition, he fails to state a claim under Section 103.455.

Milford argues for a liberal reading of the statute, but his request is little more than an improper invitation to the Court to rewrite the work of the Wisconsin legislature. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1749 (2020) ("[W]hen the meaning of the statute's terms is plain, [the Court's] job is at an end."); *Kier v. Ocwen Loan Serv., LLC*, 122 F. Supp. 3d 786, 791 (N.D. Ill. 2015) ("[T]he liberal construction canon is not a judicial license to rewrite a statute to fit what a court thinks [the legislature] should or might have said, but did not.") (citation omitted). Milford is correct that the Wisconsin Supreme Court has explained that the phrase "wages due or earned" should be interpreted broadly, (ECF No. 11 at 8); *Batteries Plus, LLC v. Mohr*, 628 N.W.2d 364 (Wis. 2001), but the plain language of the statute requires at the very least the employer take some type of affirmative deduction from an employee's wages, compensation or earnings. Roehl's post-employment collection efforts simply do not qualify as a "deduction" "from [] wages due or earned." To hold otherwise would contort the plain language of the statue beyond recognition. Milford has not cited a case in which a court has applied §103.455 to collection efforts pursuant to an executed agreement between employer and employee and the Court has found none.[3] Given

---

[3] Moreover, the post-employment collection efforts had nothing to do with "defective or faulty workmanship, lost or stolen property or damage to property." Wis. Stat. §103.455.

the plain language of §103.455, Milford's alleged "retroactive deductions" do not come within the statute's purview.

Milford also argues he was not paid a minimum wage for his hours worked. Roehl's minimum wage claim remains viable as alleged in Count I and Count III, but this claim is entirely separate from allegations of improper deductions under Wis. Stat. §103.455. Accordingly, Count II of the amended complaint is dismissed.

### III. Milford Does not State a Claim under Wisconsin's Deceptive Trade Practices Act.

Count IV of the amended complaint is a claim under Wisconsin's DTPA, Wis. Stat. §100.18(1). "The purpose of [the DTPA] is to protect consumers from untrue, deceptive or misleading representations made to promote the sale of a product." *T&M Farms v. CNH Indus. Am., LLC*, No. 19-C-0085, 2020 WL 1082768, at *9 (E.D. Wis. Mar. 5, 2020). To allege a claim under the DTPA, the plaintiff must plead elements that (1) "the defendant made a representation to one or more members of the public with the intent to induce an obligation; (2) the representation was untrue, deceptive or misleading; and (3) the representation materially induced a pecuniary loss to the plaintiff." *Id.*

Roehl argues that Milford's DTPA claim fails because there are no allegations that the Training Agreement was "ma[d]e, publish[ed], disseminate[d], circulate[d], or place[d] . . . before the public." (ECF No. 10 at 14 (citing Wis. Stat. §100.18(1)).) While this argument is not without logic, given that the statute requires the representation be made to the public and there are no factual allegations that Roehl published the Training Agreement in any type of publication or distributed, publicized, or disseminated it in any way to the public, it nevertheless fails because the Wisconsin Supreme Court has recently rejected it. In *Hinrichs v. DOW Chemical Company*, 937 N.W.2d 37 (Wis. 2020), the court held that "[a] single representation to a single person is enough to trigger §100.81(1)'s protections." *Id.* at 52.

Milford's DPTA claim nevertheless fails for a different reason. Wisconsin courts have limited the type of actional representation under the DPTA. More specifically, mere silence or even a fraudulent omission cannot trigger DPTA liability. *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 (Wis. 2004) ("To permit a nondisclosure to qualify as an actionable 'assertion, representation or statement of fact' under Wis. Stat. §100.18(1) would expand the statute far beyond its terms."). Accordingly, Milford's DPTA claim fails because it is premised on Roehl's failure to disclose in the Training Agreement that it would take various deductions

from the wages earned by employees is a based on an omission, which cannot support a DTPA claim. (*See* ECF No. 8-1 ¶89-93 (alleging Roehl's failure to disclose that it would take various deduction from the wages earned by employees who participated in the Training Agreement)). Such a nondisclosure "is not an 'assertion, representation or statement of fact' under Wis Stat. §100.81(1)." *Tietsworth*, 677 N.W.2d at 245.

Milford tries to create an actionable representation by pointing to language in the Training Agreement expressly stating that the debt would become payable only if his employment with Roehl ended before he drove 40,000 paid solo miles. (ECF No. 11 at 15-16.) This may be an express statement rather than an omission, but it is not actionable under Section 100.81(1). If Roehl violated this statement, it would be a breach of a promise or contract, not a misrepresentation. Moreover, the amended complaint confirms Roehl's conduct was consistent with the statement. While Milford contends Roehl improperly took deductions for the training from Milford's wages in violation of this statement *during* his employment, (ECF No. 11 at 15-16), Milford also affirmatively acknowledges and alleges that he "worked as a truck driver for Defendant from approximately September to October 2020" and that the deductions were taken from his wages *afterward*—on November 5, 2020 and November 12, 2020. (ECF No. 8-1 ¶¶5, 90, 92.) Thus, Milford's own pleading defeats any claim based that deductions were taken during his employment.

Milford finally contends that Roehl made fraudulent statements about the value of the Training Agreement and how much Roehl expended on the training. (ECF No. 11 at 14.) But these are mere puffery and expressions of opinion that are not sufficient to support a DTPA claim. *See Tiestworth*, 677 N.W.2d at 245. Puffery involves "exaggerations reasonably to be expected of the seller as to the degree of the degree of quality of [a] product, the truth or falsity of which cannot be precisely determined." *Id.* (citations omitted). A statement is not actional under the DTPA if it expresses "mere opinions on quality, value, authenticity or other matters of judgment." *Slane v. Emoto*, 582 F. Supp. 2d 1067, 1085 (W.D. Wis. 2008) (citing *Consolidated Papers, Inc. v. Dorr-Oliver, Inc.*, 451 N.W.2d 456, 459 (Wis. Ct. App. 1989)). The Training Agreement statements that Milford will acquire "valuable experience, training and information concerning the competent, safe, and efficient operation of tractor/trailers" and that Roehl "will expend a significant amount of time, money and effort to provide [Milford] will first class job training" are precisely the sorts of opinions that are not covered by the DTPA. Milford similarly argues that Roehl "violated the

DPTA because it made multiple fraudulent misrepresentations to the public in the [Training] Agreement with the intent to induce the public to participate in the [Training Agreement]." (ECF No. 8-1 ¶80.) The amended complaint states that "education and training" program consists of "nothing more than team driving with a more experienced driver." (ECF No. 8-1 ¶¶81-82.) The allegation, however, does not state how Roehl misrepresented the training Milford would receive. Milford does not allege that the Training Program failed to provide "valuable experience, training, and information concerning the competent, safe, and efficient operation of tractor/trailers." Milford alleges no actionable untrue, deceptive or misleading statement. Milford's complaint must contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Twombly*, 550 U.S. at 557.

The Wisconsin Court of Appeals' unpublished decision in *Bundy v. University of Wisconsin-Eau Claire*, No. 97-2735, 1998 WL 265042 (Wis. Ct. App. 1998) is instructive. In *Bundy*, the plaintiff sued the University of Wisconsin-Eau Claire because of an alleged promise made to him regarding his employment status at the university. *Id.* at *1. The plaintiff brought a claim under the DTPA. *Id.* The court stated that the plaintiff "ignore[d] the context in which [the] principles [of §100.18] apply; that is, to protect consumers from unfair marketing practices." *Id.* at *4. The court found that a review of §100.18 cases "confirms the scope of its applicability," which is "a consumer protection issue." *Id.* The court also found that no case dealt with a claim of fraudulent statements allegedly made to induce entry into an employment contract. *Id.* Accordingly, the court held that he DTPA does not apply to misleading statements intended to induce employment. *Id.* It is not clear what alleged fraudulent statements induced Milford to agree to employment with Roehl sufficient to allege a DTPA claim. And to prevail under the DPTA, "a plaintiff must prove that a defendant's misrepresentations were 'a significant factor contributing to [its] decision' to buy, rent, or use a 'product or item' and that it 'sustained a monetary loss as a result.'" *SportPet Designs Inc. v. Cat1st Corp.*, No. 17-cv-0554 2018 WL 1157925 (E.D. Wis. Mar. 2, 2018) (citing *Novell v. Migliaccio*, 749 N.W.2d 544, 553 (Wis. 2008)). In this case, Milford does not plausibly allege that Roehl's misrepresentations caused him to sustain any pecuniary losses recoverable under the DPTA. The only pecuniary loss Milford identifies is the money Roehl collected for the Training Program. Milford suffered that loss because his employment ended before he drove 40,000 solo miles. Milford fails to allege in his amended complaint or in his response brief that he left the Training Program early because of

Roehl's alleged misrepresentations concerning the Training Program. Consequently, there is no causal link between Roehl's alleged misrepresentations and Milford's pecuniary loss. Because Milford's complaint fails to plausibly allege that Roehl's misrepresentations "materially … caused a pecuniary loss" recoverable under the DTPA, his claims under that statute necessarily fail. *See id.* at *7. Accordingly, the Court will dismiss Count IV of Plaintiff's amended complaint.

## CONCLUSION

For the reasons given above,

**IT IS HEREBY ORDERED** that the Defendant's motion to dismiss, ECF No. 9, is **GRANTED in part and DENIED in part**: To the extent Plaintiff's FLSA minimum wage claim (Count I) and Wisconsin minimum wage claim (Count III) are based on Defendant's post-employment collections, those claims are dismissed and Defendant's Motion to Dismiss is **GRANTED**. To the extent Plaintiff's FLSA (Count I) and Wisconsin minimum wage claim (Count III) are based on Plaintiff's allegation that Defendant failed to pay Plaintiff the minimum wage for all hours worked, Defendant's motion to dismiss is **DENIED**.

**IT IS FURTHER ORDERED** the Defendant's Motion to Dismiss Count II of the amended complaint is **GRANTED** and Count II is hereby **DISMISSED** for failure to state a claim.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Count IV of the amended complaint is **GRANTED** and Count IV is hereby **DISMISSED** for failure to state a claim.

**IT IS FURTHER ORDERED** that Defendant file its response to the remaining causes of action in Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(a)(4)(A).

Dated at Milwaukee, Wisconsin on March 14, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge